Present:  All the Justices

CARL R. CATRON
                         OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 970582                      January 9, 1998

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.


          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Richard C. Pattisall, Judge


     In this insurance case, we must determine the respective

underinsurance obligations of a self-insurer and a commercial

insurer under two statutes, one codified among the insurance laws

and the other codified among the motor vehicle laws.

     The facts were stipulated.  On June 15, 1989, appellant

Carl R. Catron, an employee of appellee Roanoke County acting

within the scope of his employment, was injured when a Roanoke

County vehicle that he was operating collided with a vehicle

operated by Brian D. Layman.

     At the time of the accident, Layman was insured under a

policy issued by Rockingham Casualty Company that provided

liability coverage limits of $100,000 for each person injured.

At the same time, Catron was the named insured under a policy

issued by appellee State Farm Mutual Automobile Insurance Company

that provided uninsured motorist coverage limits of $100,000 for

each person.

     At the time, Roanoke County was self-insured for automobile

liability and uninsured motorist coverage purposes, and also for

workers' compensation purposes.  The County's limit of liability

for uninsured motorist coverage was $25,000 for each person.

The County has paid in excess of $222,325 in benefits to Catron pursuant to its obligations under the Virginia Workers' Compensation Act for injuries he sustained in the accident. The County continues to be liable for benefits under the Act.

Rockingham tendered a check to Catron in the amount of $100,000, its policy limits. The County claims entitlement to those proceeds as a result of its payment of workers' compensation benefits.

In July 1994, Catron filed the present motion for declaratory judgment naming State Farm, Layman, the County, and Rockingham as defendants. Asserting he has incurred medical expenses and lost wages in excess of $125,000, plaintiff asked the court to declare that State Farm has the obligation to pay him $25,000 based on the applicable priority of underinsured coverage in the case. State Farm denied that it owed the plaintiff any insurance benefits under the circumstances.

The pleadings and stipulation presented a pure question of law and, upon consideration of argument of counsel, the trial court ruled against the plaintiff. The court held that State Farm's uninsured/underinsured motorist coverage was primary coverage and that it owed no payment to the plaintiff. The court also held that the self-insured uninsured/underinsured motorist benefit provided by the County was secondary coverage.

The plaintiff appeals. The County, although nominally an

appellee, supports the plaintiff's position on appeal.

We shall summarize the statutes pertinent to this controversy. The uninsured motorist statute requires a motor vehicle liability policy to provide at least $25,000 for each person in uninsured motorist coverage through provisions that "also obligate the insurer to make payment for bodily injury . . . caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section." Code § 38.2-2206(A).

Subsection B states that a motor vehicle is "underinsured" if "the total amount of bodily injury . . . coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle." Code § 38.2-2206(B).

The same subsection provides that "available for payment" means "the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury . . . reduced by the payment of any other claims arising out of the same occurrence." Id.

A focus of this appeal is upon the following provisions of subsection (B).

> "If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such policies in the following order of

priority:

    1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;

    2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;

    3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured;

    Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be proportioned as to their respective underinsured motorist coverages."

The appeal also focuses on Code § 46.2-368 (formerly § 46.1-395), codified among the motor vehicle laws. This statute deals with the discretionary power of the Commissioner of the Department of Motor Vehicles to issue certificates of self-insurance.

It specifies the certificate must provide protection against an uninsured or underinsured motorist "to the extent required by § 38.2-2206." It also provides that "protection against the uninsured or underinsured motorist required under this section . . . shall be secondary coverage to any other valid and collectible insurance providing the same protection which is available to any person otherwise entitled to assert a claim to such protection by virtue of this section." § 46.2-368(B).

On appeal, the plaintiff contends the trial court erred in ruling that the credit priorities of § 38.2-2206(B) were reversed by the "secondary" language of § 46.2-368(B).

The plaintiff argues he met the definition of "underinsured" in 2206(B).  He says the amount of coverage "available for payment" is $100,000, the full amount of the bodily injury liability coverage of Layman's Rockingham policy. This sum is less than the total amount of uninsured motorist coverage afforded him, which is $125,000 (the County's $25,000 uninsured coverage plus the plaintiff's $100,000 State Farm policy in which he was the named insured).  Consequently, he argues, he was underinsured in the amount of $25,000.

Continuing, the plaintiff argues that the "order of priorities for crediting an amount available for payment against the underinsured coverage is controlled by § 38.2-2206(B)(1)." He contends that the statutory language establishes the following order of credits:  (1) $25,000 uninsured coverage from the County (the policy covering the vehicle occupied by the injured person at the time of the accident); and (2) $100,000 uninsured coverage from plaintiff's State Farm policy (the policy covering a vehicle not involved in the accident but under which the injured person is a named insured).

Therefore, the plaintiff contends, "[t]he entire $25,000 of Roanoke County's coverage is covered by the $100,000 credit.  The remaining $75,000 of that $100,000 credit covers $75,000 of State Farm's $100,000."  Thus, plaintiff concludes, $25,000 remains and State Farm will owe that amount if his personal injury claim is tried or settled for an amount equal to or more than $125,000.

State Farm, on the other hand, argues the trial court correctly ruled that its coverage was primary and the County's coverage was secondary. Because the municipal self-insurance is secondary, State Farm argues, State Farm's coverage assumes the "position of primary coverage in the UIM calculation," meaning that "State Farm's policy is first in line for payment and also for the credit generated by the available liability coverage." Thus, it contends, "that credit covers all of State Farm's potential coverage, and State Farm owes nothing in this case."

State Farm argues "the legislature meant what it said" in Code § 46.2-368(B) "when it made a self-insurer `secondary' for purposes of coverage analysis under the Virginia UM/UIM statute, Code § 38.2-2206." Embarking on what it calls a "chronological review of the relevant statutory and decisional history" of the subject, State Farm urges there is "no doubt" that the County, "as a UM/UIM self-insurer, is subject to the requirements of Code § 38.2-2206 in all respects except that its coverage is `secondary' for all purposes."

State Farm argues that, since 1972, "former Code § 46.1-395 and current Code § 46.2-368 have required self-insurers to provide UM coverage, but have placed self-insurers categorically in the `secondary' position for purposes of UM coverage priority." State Farm contends that, in 1988, "sixteen years after self-insurers first became obligated to provide `secondary' UM coverage, Code § 38.2-2206 was amended to create a single,

statutory priority rule for multiple applicable UIM coverages --
a priority that governs the order in which the coverages line up
both for payment and for allocation of the `credit' for available
liability coverage."

Continuing, State Farm urges that, regarding "coverage on
the vehicle involved in the accident, self-insured coverage
ordinarily would be first priority UIM coverage for purposes of
payment and allocation of the credit under Code § 38.2-2206. The
categorical command of Code § 46.2-368, however, makes the self-
insured coverage `secondary' to all other coverages, meaning that
it comes last for purposes of payment and allocation of the
credit. This is the conclusion that the trial court correctly
reached in this case."

Finally, State Farm contends the plaintiff's argument rests
on a "misreading" of Code § 38.2-2206. It claims the General
Assembly did not intend "to make self-insurers secondary for some
purposes but primary for other purposes under Code § 38.2-2206."
It argues "Code § 38.2-2206(B) establishes a single order of
priority among applicable UIM coverages and endows that order of
priority with two consequences: it governs both the order in
which UIM coverage pay[s] and the order in which available
liability insurance is credited. Code § 46.2-368 make[s] self-
insured UM/UIM coverages `secondary' to all other coverages for
all purposes, without distinction." We do not agree with State
Farm.

We have already determined "the language of Code § 38.2-2206(B) to be clear and unambiguous." <u>Dairyland Ins. Co.</u> v. <u>Sylva</u>, 242 Va. 191, 195, 409 S.E.2d 127, 129 (1991). And, when statutory language is clear and unambiguous, "there is no need for construction by the court; the plain meaning and intent of the enactment will be given it." <u>Brown</u> v. <u>Lukhard</u>, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Unless a literal interpretation of statutory language will amount to a manifest absurdity, courts should not adopt a construction that, in effect, holds the legislature did not mean what it actually has expressed. <u>Sylva</u>, 242 Va. at 194, 409 S.E.2d at 129.

We shall read § 38.2-2206(B) literally, for the moment without regard to § 46.2-368. The applicable "order of priority of policies" dictates that the sum available for "payment" shall be "credited" against the several policies in "the following order of priority:" first, the County's $25,000, from the policy covering the County motor vehicle occupied by the plaintiff at the time of the accident (there is no dispute that a self-insurer's certificate of insurance is equivalent to an insurance "policy" for purposes of this controversy); second, State Farm's $100,000, from the policy covering a motor vehicle not involved in the accident under which the plaintiff was the named insured.

Code § 46.2-368(B), however, provides that the "protection against the uninsured or underinsured motorist required under this section . . . shall be secondary coverage to any other valid

and collectible insurance providing the same protection which is available to any person otherwise entitled to assert a claim to such protection by virtue of this section."  We hold that this language does not alter or reverse the credit priorities, as opposed to the payment priorities, set forth in § 38.2-2206(B).

The General Assembly, in what is now § 46.2-368, has recognized "a distinction in the financial implications of recovery from self-insurers and recovery from commercial insurers."  William v. City of Newport News, 240 Va. 425, 432, 397 S.E.2d 813, 817 (1990).  The legislature has placed self-insurers in a favored status.  For example, the proviso in Code § 38.2-2206(I) requires a self-insurer's workers' compensation payments to be set off against any judgment for damages awarded pursuant to the statute for personal injuries resulting from the industrial accident.

Consistent with the foregoing legislative policy, the General Assembly has not specified that the "secondary" language in 368 modifies the credit priority design of 2206.  Nowhere in 368 are the words "credit" or "priority" used.  Surely, if the General Assembly had intended 368 to modify the credit priorities of 2206, it would have included language to effect that purpose, so that a self-insurer always would be prohibited from assuming a first priority credit position.  This has not been done.

As the plaintiff points out, State Farm seeks a reading of the statutes "that will push its $100,000 credit ahead of Roanoke

County's $25,000 credit, so that its underinsurance coverage will be totally set off by the credit, and the County will therefore bear the entire burden of the underinsurance coverage . . . . [T]his would totally defeat the legislative intent behind § 46.2-368(B)."

Finally, State Farm relies heavily on Hackett v. Arlington County, 247 Va. 41, 439 S.E.2d 348 (1994), a case decided before the 1995 amendment to § 46.2-368(B) that obligated self-insurers to provide underinsured motorist coverage. See Acts 1995, ch. 85. There, we stated: "The sole question presented in this appeal is whether Arlington County, a self-insured entity, is required to provide underinsurance coverage to an employee." 247 Va. at 42, 439 S.E.2d at 348. Interpreting § 46.2-368(B) with § 38.2-2206, we answered the query in the affirmative. Hackett is not controlling here. The issues in the two cases are entirely different.

Consequently, we hold that the trial court erred in ruling § 46.2-368(B) modified the credit priorities of § 38.2-2206. We will reverse the judgment below and enter final judgment here in favor of the plaintiff. We will declare that Code § 38.2-2206(B) controls the coverage credit priorities in this case and that State Farm is liable to the plaintiff for $25,000 if there is a settlement or judgment in the plaintiff's personal injury claim equal to or in excess of $125,000.

<u>Reversed and final judgment</u>.