# CIRCUIT COURT OF WARREN COUNTY

Diane Crump

    v.

D. J. Forbes

February 11, 2000

Case No. (Law) 99-281

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Defendant's Demurrer to a motion for judgment based upon the Defendant's alleged use without permission of the plaintiff's name in an internet address for the defendant's business which competes with the plaintiff's horse brokering business. The parties had previously argued their positions, and the court requested that they file memoranda of authorities. Upon consideration, the Court has decided to overrule the demurrer to the statutory action under Virginia Code § 8.01-40 for unauthorized use of a name in commerce, but to sustain the demurrer as to the publicity, conversion, and quasi-contract counts of the motion for judgment.

## I. *Statement of Material Facts*

The following facts have been pleaded in the motion for judgment.

Diane Crump is an equestrian of national renown. She was the first female jockey in the United States to ride professionally in a pari-mutual horse race, and she was the first female jockey to ride in the Kentucky Derby.

On or about August 1, 1998, Crump entered into a business relationship with Forbes under which "Defendant agreed to design, promote, and update regularly for Plaintiff's equine consulting and brokering business a web page on the internet, in exchange for a 10% commission on all gross sales commissions resulting therefrom." Motion for Judgment ¶ 6.

Pursuant to the agreement between the parties, the Defendant established a web site account for the Plaintiff with the internet address of: http://www.rmaonline.net/dcrump.

"From August 1998 until July 1999, pursuant to the aforesaid business relationship between the plaintiff and the defendant, defendant regularly placed advertisements on the internet for the above-identified web address and established internet linkages whereby inquiries made in the plaintiff's name through various internet search services (search "engines") would direct the inquiring party to the above-identified web address. The web address generated substantial inquiries and business for the plaintiff, and by spring of 1999 gross monthly sales commissions earned were between six and eight thousand dollars per month." Motion for Judgment ¶ 7.

In the spring of 1999, the defendant went into business in direct competition with the plaintiff.

On July 28, 1999, without the plaintiff's consent, the defendant deleted from the internet the web address of http://www.rmaonline.net/dcrump.

"On or about August 1, 1999, without informing Plaintiff or obtaining her consent, Defendant reestablished the internet web address of http://www.rmaonline.net/dcrump for the purpose of advertising and promoting Defendant's company, Equine Promotions. Individuals accessing the said web address, without further action on their part or notice to them, were and continue to be forwarded automatically to Defendant's Equine Promotions web site." Motion for Judgment ¶ 11.

"After Defendant severed her business relationship with Plaintiff, Defendant allowed internet linkages, previously established by Defendant under the parties business relationship to further Plaintiff's equine consulting and brokerage business, to continue in place, with such linkages directing inquiring parties to the internet address of http://www.rmaonline.net/dcrump, which in turn forwarded automatically all such inquiries to Defendant's own competing Equine Promotions web site." Motion for Judgment ¶ 12.

"In September of 1999, Plaintiff learned that Defendant was using the web address http://www.rmaonline.net/dcrump to promote Defendant's Equine Promotions business, and immediately thereafter demanded that Defendant cease using the name 'Crump' or the web location comprised of the letter combination 'dcrump' in any internet advertising, promotion, or web

address, or in any other medium. Defendant continued to use the letter combination 'dcrump' as part of the web address http://www.rmaonline.net/dcrump, and merely inserted a disclaimer on the Equine Promotions web site (to which all inquiries using the web location 'dcrump' were forwarded) stating that the site was not affiliated with Diane Crump or Diane Crump Equine Sales of Bentonville, Virginia."

Crump has filed a four count motion for judgment against Forbes. Count One is a statutory right of action for the unauthorized use of her name pursuant to Virginia Code § 8.01-40(A). Count Two is a common law right of publicity action. Count Three is a conversion action, and Count Four is a quasi-contract action. Forbes has demurred to all counts of the motion for judgment.

## II. Conclusions of Law

In considering a demurrer the Court must apply "the settled rule that a demurrer admits the truth of all well-pleaded material facts. All reasonable inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Russo v. White*, 241 Va. 23, 24, 400 S.E.2d 160 (1991), quoting *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373 (1988). "Upon demurrer, the test of the sufficiency of the motion for judgment is whether it states the essential elements of a cause of action, not whether evidence might be adduced to defeat it." *Lyons v. Grether*, 218 Va. 630, 638, 239 S.E.2d 103 (1977). "To justify the Court in sustaining a demurrer to a complaint, the ground of the demurrer must be a short, dry point of law upon which it is clear that the complaint will be dismissed . . . at the hearing." 16 M.J., *Demurrer*, § 48.

Virginia Code § 8.01-40(A) provides for a right of action to "any person whose name . . . is used without first obtained the written consent of such person . . . for advertising purposes or for the purposes of trade." The use of "dcrump" to advertise the Defendant's equine brokerage business was clearly a use for trade purposes, and the only issue with respect to the application of the statute is whether the use of "dcrump" as the name of an internet web page is the use of a name within the purview of the statute. The statute does not define the term name, and this appears to be a case of first impression in Virginia. However, the statute is a remedial statute; therefore, the Court should "construe it liberally so as 'to avoid the mischief at which it is directed and to advance the remedy for which it was promulgated'." *Valley Acceptance Corp. v. Glasby*, 230 Va. 422, 428, 337 S.E.2d 291, 295 (1985). "The unauthorized use of a person's name as an integral part of advertising matter

'has almost uniformly been held actionable'." *Town & Country Properties v. Riggens*, 249 Va. 387, 395, 457 S.E.2d 356 (1997), *quoting with approval Gautier v. Pro-Football, Inc.*, 106 N.Y.S.2d 553, 556 (1951). While the use of a person's name in a commercial internet address may not have been contemplated when the statute was enacted, the statute's application to this situation is a logical progression in its evolution in a changing world. It is simply the application of a well established statutory right of action in a new context. *See, e.g., Umbro Int'l, Inc. v. 3263851 Canada, Inc.*, 48 Va. Cir. 139 (Fairfax 1999) (internet domain names may be garnished).

The plaintiff's name "dcrump" was used in commerce to promote the Defendant's new and competing horse brokering business. The only historical use of the name "dcrump" in the horse brokering market was by the business in which the Plaintiff was engaged and in which the clear intent was to trade on the fame associated with the Plaintiff's name in horse circles. It is the association of name with a particular person in a specific context that gives the name both its practical significance and determines the scope of its legal protection under § 8.01-40. People rarely use their full names; even in formal legal documents and business letters, the practice is to use the middle initial not the full middle name. On the other hand people regularly use their nicknames and initials to identify themselves, and these permutations of a person's name are no less their name within the context of their interaction with other persons than their full name. "Under the common law, a person may adopt any name he or she wishes . . . ." *In re Change of Name of Miller*, 218 Va. 939, 942, 243 S.E.2d 464 (1978). On the internet today, persons regularly use their first initial and last name, as was done in this case to identify their internet address. In the instant case, the use of the name "dcrump" was clearly intended to be a name that would lead interested horse buyers to the defendant's web page. In the context of a web address, "dcrump" is a name. Since it was used to promote the defendant's business, its use without permission was prohibited by Virginia Code § 8.01-40.

Plaintiff concedes that no Virginia court has ever recognized that a common law right of publicity exists and cites cases from other jurisdictions to urge this court to venture where no Virginia court has ever trod. As the Supreme Court noted in *MNC Credit Corp. v. Sickels*, 255 Va. 314, 317-318, 497 S.E.2d 331 (1998):

> The General Assembly has declared that "the common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full

force within the same, and be the rule of decision, except as altered by the General Assembly." Va. Code § 1-10.

In *Weaver v. Commonwealth*, 25 Va. App. 95, 101, 486 S.E.2d 558 (1997), *quoting* Black's Dictionary, 250-51 (5th ed.), the Court of Appeals quoted the definition of the common law:

Common law. As distinguished from law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts . . . .

To ascertain the common law, Virginia trial courts look to decisions of the appellate courts in Virginia and, in the absence of any ruling, then to the English common law. *See, e.g., Kraft v. Burr*, 252 Va. 273, 476 S.E.2d 715 (1996) (Supreme Court decided fishing rights case based on Hale's treatise which was first printed in 1787). No venerable or hoary authority from the common law has been cited to this court in support of the plaintiff's contention that there is a common law right of publicity, but rather cases are cited from other jurisdictions whose common law genealogy is unknown to this court. "The common law is not some brooding omnipresence in the sky but the articulate voice of some sovereign or quasi-sovereign that can be identified." *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 222 (Oliver W. Holmes, Jr., dissent).

No source of the common law right of publicity has been identified in Virginia common law, *but cf. In re Change of Name of Miller*, 218 Va. 939, 942, 243 S.E.2d 464 (1978) (any name may be used under the common law so long as it "does not infringe on the rights of others"), and the Supreme Court has ruled that the law governing the use of a person's name for trade purposes is statutory. "Virginia . . . recognizes a right of privacy [to the use of person's name] in a limited form by statute [§ 8.01-40]." *Town & Country Properties v. Riggens*, 249 Va. 387, 394, 457 S.E.2d 356 (1997); *see also Lavery v. Automation Mgt. Consultants*, 234 Va. 145, 151-154, 360 S.E.2d 336 (1987) (applying § 8.01-40(A)). No right of action should be inferred where the General Assembly has expressly acted to specifically address a problem, as it did when it enacted Virginia Code § 8.01-40. Therefore, the demurrer is sustained as to the common law right of publicity right of action in Count Two on the Motion for Judgment.

While a § 8.01-40 right of action is one for invasion of property rights, *Lavery v. Automation Mgt. Consultants*, 234 Va. 145, 154, 360 S.E.2d 336 (1987), the exclusive remedy for the invasion of the right and wrongful appropriation of the name in commerce is the statutory action. Therefore, the demurrer is sustained as to the conversion and quasi-contract counts.

## III. *Decision*

Upon consideration whereof, it is adjudged and ordered that:

1. Defendant's Demurrer is overruled as to Count One (§ 8.01-40(A) action) of the Motion for Judgment.

2. Defendant's Demurrer is sustained as to Count Two (right of publicity), as to Count Three (conversion), and as to Count Four (quasi-contract) of the Motion for Judgment.