Christopher WIEST, Plaintiff,

v.

E–FENSE, INC., et al., Defendants.

No. CIV.A. 04–1201.

United States District Court,
E.D. Virginia.
Alexandria Division.

Feb. 9, 2005.

Christopher D. Wiest, Pro–Se, Columbus, OH, for Plaintiff.

William F. Coffield, Esquire, Lankford, Coffield & Reid, Alexandria, for Defense Attorneys.

### *ORDER*

LEE, District Judge.

THIS MATTER is before the Court on Defendants E–Fense, Inc., *et al.*'s Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Mr. Christopher Wiest ("Plaintiff," "Mr. Wiest"), formerly an Air Force Academy cadet whose conviction by a military trial judge was overturned by the United States Court of Appeals for the Armed Forces, alleges claims of libel and invasion of privacy against the defendants for publishing allegedly false and defamatory information on their corporate website. The questions before the Court are (1) whether Mr. Wiest states a claim for defamation when he alleges that Defendants published on their website allegedly incomplete information regarding his court martial and allegedly false information regarding his conduct, (2) whether Mr. Wiest states a claim for statutory invasion of privacy when his name and information about his trial proceedings were placed on Defendants' website, and

for common law invasion of privacy under Virginia law, and (3) whether Mr. Wiest states a claim against the employees and officers of Defendant E–Fense, Inc. The Court holds that Mr. Wiest states a claim for defamation under Virginia law because the statements made about him on the E–Fense website are allegedly false, and as to his interactions with military justice, they are not a fair and accurate description of the public record. Mr. Wiest also states a claim for statutory invasion of privacy under Virginia law because the allegations in the complaint meet the requirements of Va.Code Ann. § 8.01–40 (Michie 2004). Mr. Wiest fails to state a claim for common law invasion of privacy because no such cause of action exists in Virginia. Finally, Mr. Wiest states claims against Defendant Andrew Fahey and John Doe Employees 1 through 20 because he alleges they were engaged in an intentional tort against him.

### I. BACKGROUND

Plaintiff Christopher Wiest ("Wiest," "Plaintiff"), a cadet at the Air Force Academy, was convicted of one specification of Article 134, Uniform Code of Military Justice [hereinafter "UCMJ"] 10 U.S.C. § 934 (2000), in violation of 18 U.S.C. § 1030(A)(5)(B) (2000), and acquitted of three specifications of Article 134, in violation of 18 U.S.C. § 1030(A)(5)(A). He was sentenced to dismissal and partial forfeitures, and the Air Force Court of Criminal Appeals affirmed the findings and sentence. *United States v. Wiest,* No. ACM33964, 2002 WL 31235026 (A.F.C.M.R. Sept. 24, 2002). After finding that the military trial judge abused his discretion in denying a continuance request made for the purpose of obtaining civilian counsel, the United States Court of Appeals for the Armed Forces reversed the findings, set aside the sentence and returned the record of trial to the Judge

Advocate General for further disposition not inconsistent with its opinion. *United States v. Wiest,* 59 M.J. 276 (C.A.A.F. 2004).

Plaintiff alleges that on and after October 31, 2003, Defendants E–Fense, Inc., Andrew Fahey, an officer and employee of E–Fense, Inc., and John Doe Employees, 1 through 20, employees of E–Fense, Inc. located in Virginia, Colorado or Texas (collectively, "Defendants"), published on their website "false assertions... that he was convicted of a federal felony and engaged in acts that constituted a federal felony." Complaint ¶ 4. Furthermore, Plaintiff alleges that Defendants falsely asserted that he was dishonorably discharged, engaged in illegal "hacking," and was tried and convicted of several sections of the UCMJ and discharged from service as a result. *Id.* ¶¶ 5–7. Plaintiff attaches to his complaint the August 17, 2004 version of the website stating:

> In 1996, the United States Air Force Academy blocked the use of direct Internet relay chatting (IRC) from its cadets. A few months later, around July 1997, Air Force Academy Cadet Christopher Wiest received an email from a friend he used to chat with online, questioning why he hadn't been using IRC. Wiest explained the Academy's new regulations regarding Internet chat, and the friend suggested he attempt telneting in order to get onto IRC.
>
> With that suggestion, and support from his friend, Wiest began to develop his skills as a hacker—breaking into commercial servers to develop artificial accounts and IRC servers. Soon after, the Air Force Office of Special Investigations, having reason to suspect Wiest of his activities, searched his room, seized his PC, and took a written statement from the cadet. Tried for several sections of the UCMJ, Wiest was eventually dishonorably discharged from service.

Complaint, Ex. A. Plaintiff alleges that Defendants published information they knew to be false "by asserting that he was convicted of a federal felony and engaged in acts that constituted a federal felony" and stating that he was "dishonorably discharged from service." Complaint ¶¶ 4–5. Plaintiff alleges that his reputation was damaged by this erroneous information.

On September 14, 2004, Plaintiff sent a letter to Defendants, also attached to his complaint, stating that Mr. Andrew Fahey, an E–Fense, Inc. employee, had "botched the investigation of ... [his] case by failing to follow up material leads, failing to log on with the information given him following my interview to ascertain and establish key facts" and other actions. Complaint, Ex. C. The letter further states that the Court of Appeals for the Armed Forces set aside his court martial on March 16, 2004 and points the reader to a website with the appellate opinion. *Id.* In addition, Mr. Wiest writes, "I point this information out in light of the fact that you might not have been aware of this information prior to this letter, or prior to publishing or continuing to publish your website," and demands that any and all language concerning him be removed from the website. *Id.*

On September 20, 2004, a new version of the information under the section entitled "Case History" was published on the E–Fense website. The September 20, 2004 version of the website states:

> In 1996, the United States Air Force Academy blocked the use of direct Internet relay chatting (IRC) from its cadets. A few months later, around July 1997, An [*sic*] Air Force Academy Cadet received an email from a friend he used to chat with online, questioning why he hadn't been using IRC. The cadet explained the Academy's new regulations regarding Internet chat, and

the friend suggested he attempt telneting in order to get onto IRC.

With that suggestion, and support from his friend, Wiest began to develop his skills as a hacker—breaking into commercial servers to develop artificial accounts and IRC servers. Soon after, the Air Force Office of Special Investigations, having reason to suspect the cadet of his activities, searched his room, seized his PC, and took a written statement from the cadet. Tried for several sections of the UCMJ, the cadet was eventually discharged from service.

Complaint, Ex. B. Plaintiff alleges that this revised publication, which continues to contain his name and allegedly incorrect information regarding his conduct, status as a member of the military, and how many sections of the UCMJ he was tried for, was also defamatory and "damages his reputation." Complaint ¶ 6.

Based on these facts, Plaintiff alleges four [1] causes of action in his complaint: libel and slander, violation of the insulting words statute, statutory invasion of privacy, and common law invasion of privacy. All four counts are alleged against all the defendants: E–Fense, Inc., Mr. Andrew Fahey, an employer and officer of E–Fense, Inc., and John Doe Employees, 1 through 20, employees of E–Fense, Inc. Mr. Wiest seeks compensatory and punitive damages, as well as injunctive relief consisting in ordering Defendants to remove any material referencing him from their website.

Defendants move the Court to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In particular, they assert that Plaintiff's causes of action with respect to defamation are unsupported and conclusory and that Plaintiff fails to adequately identify the statements he

claims are false. In addition, argue the defendants, federal courts have found that allegations charged, once filed, become public record and privileged. Mem. P. & A. Supp. Defs.' Mot. Dismiss (hereinafter "Defs.' Mem.") at 4–5 (citing *Bull v. Logetronics,* 323 F.Supp. 115 (E.D.Va.1971)). Defendants seek to dismiss Plaintiff's claims for invasion of privacy on the basis that what occurs at a trial is public property and publicizing it does not constitute an invasion of privacy. *Id.* (citing *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) and *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947)). Additionally, Defendants argue that Plaintiff fails to state a claim against the employee defendants in their individual capacities because employees of a corporation are only liable for those intentional torts they commit or authorize on behalf of the corporation. *Id.* at 6 (citing *Airlines Reporting Corp. v. Pishvaian,* 155 F.Supp.2d 659, 666 (E.D.Va.2001)).

## II. DISCUSSION

### A. Standard of Review

A Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Conclusory allegations regarding the legal effect of the facts alleged need not be accepted. *See La-*

---

1. Mr. Wiest originally alleged six counts in his complaint, but he subsequently withdrew two of them—intentional infliction of emotional distress and negligent infliction of emotional distress.

*bram v. Havel,* 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendants to prepare a fair response. *Conley,* 355 U.S. at 47, 78 S.Ct. 99.

## B. Choice of Law

■ Virginia's choice of law rules govern this diversity action. *See Klaxon v. Stentor,* 313 U.S. 487, 497–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Virginia applies the *lex loci delicti* rule, that is, the law of the place of the wrong, to defamation actions. *See, e.g., Heishman, Inc. v. Fox Television Stations, Inc.,* 217 F.Supp.2d 690, 694 n. 5 (E.D.Va.2002). Because Plaintiff alleges that "the website in question is controlled from Defendant E–Fense, Inc.'s corporate headquarters located in Virginia," and the allegedly defamatory statements were published on this website, Virginia law applies. *See* Complaint ¶ 2; *see also Katz v. Odin, Feldman & Pittleman, P.C.,* 332 F.Supp.2d 909, 915 n. 4 (E.D.Va.2004) (applying Virginia law after determining that the statements at issue were allegedly published in Virginia).[2]

## C. Analysis

*Causes of Action No. 1 and No. 2: Libel and Slander, Libel and Slander Per Se, Violation of Insulting Words Statute*

■ The Court denies Defendants' Motion to Dismiss Causes of Action Numbers

One and Two because Plaintiff alleges that the statements at issue were false, and the Court finds that the statements do not represent a fair and accurate description of the court martial proceeding. Although slander is defined as defamation by speech, while libel is defamation by published writing, Virginia makes no distinction between actions for libel and slander. 12A MICHIE'S JUR. Libel and Slander §§ 1—3 (2004). Furthermore, actions under the insulting words statute, Va.Code Ann. § 8.01–45 (Michie 2005), are "virtually coextensive with the common-law action for defamation," with the exception that the insulting words statute does not require publication of the defamatory statement to a third party. *Potomac Valve & Fitting v. Crawford Fitting Co.,* 829 F.2d 1280, 1284 (4th Cir.1987). The elements of defamation under Virginia law are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight–Ridder, Inc.,* 993 F.2d 1087, 1092 (4th Cir.1993) (citations omitted).

Despite Defendants' assertions to the contrary, the E–Fense website statements constitute "actionable statements" because they are allegedly false and do not accurately reflect the public record.[3] An "actionable statement" is one that is both false and defamatory, meaning it must "tend [so] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* (citing RESTATEMENT (SECOND) TORTS § 559). Whether a statement is actionable must be determined by the Court, as it is a

---

**2.** Furthermore, the Court notes that Plaintiff and Defendants overwhelmingly relied on Virginia and Fourth Circuit cases and statutes in their briefs and raised no question about choice of law.

**3.** The Court limits its analysis to whether the statements were actionable without inquiring

into the requirement of "intent" because Defendants have not raised intent as an issue in their pleadings. Instead, they limit their bases for dismissal of the defamation claims to reliance on a public record and truth of the statements involved.

matter of law. *Id.* (citing *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985)); *see also WJLA–TV v. Levin,* 264 Va. 140, 564 S.E.2d 383, 390 (2002) (citing *Yeagle v. Collegiate Times,* 255 Va. 293, 497 S.E.2d 136, 138 (1998)). On a motion to dismiss a libel suit for lack of an actionable statement, a court must "credit the plaintiff's allegation of the factual falsity of a statement." *Chapin,* 993 F.2d at 1092 (citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Defendants may shield themselves from liability for defamation if they rely upon a public record, so long as their publication is a "fair and substantially correct" restatement of the public record. *See Alexandria Gazette v. West,* 198 Va. 154, 93 S.E.2d 274 (1956); *see also Bull,* 323 F.Supp. 115, 135 (E.D.Va.1971) (stating that allegations, when filed, become "public record, and therefore privileged. The privilege requires that the article by [*sic*] a fair and accurate account of the record").

Plaintiff alleges the falsity of the allegedly defamatory statements. As to the August 2004 version of the website, Plaintiff alleges that Defendants published information they knew to be false "by asserting that he was convicted of a federal felony and engaged in acts that constituted a federal felony" and stating that he was "dishonorably discharged from service." Complaint ¶¶ 4–5. As to the September 2004 version of the website, he alleges the

presence of incorrect information regarding his conduct, status as a member of the military, and the number of violations of the UCMJ he faced. Defendants wrote one statement that referenced the court martial as evidenced by the August 2004 version of the website, and then slightly altered it for the September 2004 version. The August 2004 version states: "Tried for several sections of the UCMJ, Wiest was eventually dishonorably discharged from service." The September version states: "Tried for several sections of the UCMJ, the cadet was eventually discharged from service." *Compare* Complaint Ex. A with Ex. B. Both statements assert that Plaintiff was "discharged," although the first one says that he was "dishonorably" discharged. Also, both statements assert that Mr. Wiest engaged in conduct that was illegal under the UCMJ. Because Mr. Wiest alleges that the statements regarding his conduct are false, and the Court must view the complaint in the light most favorable to him and credit the alleged falsity, the Court denies Defendants' motion to dismiss the complaint as to Counts 1 and 2.[4] *See Chapin,* 993 F.2d at 1092.

■ Furthermore, the fact that Defendants relied on a public record does not shield them from liability since their depiction of the record is not a "fair and accurate" representation. In *Alexandria Gazette,* the Virginia Supreme Court held

---

4. Despite Defendants' assertion to the contrary, Mr. Wiest's contention that his allegedly illegal conduct constitutes a "federal felony" is an accurate depiction of Virginia law. In *Turner v. Commonwealth,* 38 Va.App. 851, 568 S.E.2d 468 (2002), the Virginia Court of Appeals reaffirmed that "the grade of the offense is fixed by the punishment." *Id.* at 470 (citing *Bell v. Commonwealth,* 167 Va. 526, 189 S.E. 441, 443 (1937)). It then determined that the UCMJ crime of "housebreaking," which has, *inter alia,* a maximum penalty of five years of confinement constitutes a "felony" under Virginia law. *Id.* Mr. Wiest's now

overturned conviction was for "intentionally accessing a protected computer, without authorization, and recklessly causing damages, in violation of 18 U.S.C. § 1030(a)(5)(B), and Article 134, UCMJ, 10 U.S.C. § 934." *Wiest,* No. ACM33964, 2002 WL 31235026, at *1. The punishment for violation of 18 U.S.C. § 1030(a)(5)(B) in 2000 was a fine or imprisonment for not more than five years. *See* 18 U.S.C. § 1030(c)(3)(A) (2000). Consequently, applying the Virginia Court of Appeals analysis, Mr. Wiest is technically correct that his overturned conviction was for a "federal felony" under Virginia law.

that "the publication of public records to which everyone has a right of access is privileged, if the publication is a fair and substantially correct statement of the transcript of the record." *Id.* at 279 (citations omitted) (noting that while the publication does not have to be verbatim, it must be "substantially correct"). When allegations are filed, they become "public record, and therefore privileged. The privilege requires that the article by [*sic*] a fair and accurate account of the record." *Bull,* 323 F.Supp. 115, 135 (E.D.Va.1971) (holding that Plaintiff's press release stating that he had filed suit against two defendants for "conspiracy to defraud" was a "fair and accurate" account of the issues in the suit and "no action lies from such publication"). Defendants' description of events relating to the public record or Mr. Wiest's interaction with military justice, however, is not fair and accurate.

Both versions of the website state that Mr. Wiest was tried for "several sections of the UCMJ" and that he was "eventually discharged" or "eventually dishonorably discharged" from service. Mr. Wiest was tried for one specification of Article 134 of the UCMJ in violation of 18 U.S.C. § 1030(A)(5)(B) (2000) and for three specifications of Article 134 in violation of 18 U.S.C. § 1030(a)(5)(A) (2000). *See Wiest,* No. ACM33964, 2002 WL 31235026, at * 1. Consequently, it is arguably substantially correct to assert that he was tried for violation of "several sections" of the UCMJ. It is, however, incorrect to assert that Mr. Wiest was "discharged" or "dishonorably discharged" from service, since the United States Court of Appeals for the Armed Services reversed the conviction and set aside the sentence, which included dismissal. Furthermore, the obvious implication generated by the statement that he was tried for violation of "several sections" of the UCMJ and "eventually ... discharged" is that he was convicted of these violations. It is a misleading half-

truth to say that a person was convicted of a violation of the UCMJ without including the fact that his conviction was overturned on appeal. *See James v. Powell,* 154 Va. 96, 152 S.E. 539 (1930) (holding a newspaper liable for libel when it erroneously stated that the plaintiff was charged with both murder and robbery when he was charged only with murder). Consequently, Mr. Wiest does state a claim for defamation, since he alleges the falsity of the statements on E–Fense's website, and the defendants cannot shield themselves from liability because they did not provide a fair and accurate description of the public record.

*Cause of Action No. 3: Statutory Invasion of Privacy*

█ The Court denies Defendants' motion to dismiss as to Mr. Wiest's statutory invasion of privacy claim because Mr. Wiest's allegations satisfy the requirements of Va.Code Ann. § 8.01–40 (Michie 2004) and fall under none of its exceptions. Under the relevant portions of this Code provision, a person whose name is used for "advertising purposes or for the purposes of trade" without first obtaining the person's consent may sue for an injunction preventing use of his name and for damages for injuries, as well as exemplary damages if "the defendant shall have knowingly used" the name in a forbidden manner. Va.Code Ann. § 8.01–40; *see also Town & Country Properties, Inc. v. Riggins,* 249 Va. 387, 457 S.E.2d 356, 362 (1995) (holding the statute constitutional). Use for "advertising purposes" occurs when " 'it appears in a publication which, taken in its entirety, was distributed for use in, or as part of, an advertisement or solicitation for patronage of a particular product or services.'" *Riggins,* 457 S.E.2d at 362 (citing *Beverley v. Choices Women's Medical Center, Inc.,* 78 N.Y.2d 745, 579 N.Y.S.2d 637, 587 N.E.2d 275, 278

(1991)[5]). If a name or likeness is used without consent in connection with matters that are "newsworthy" or of "public interest," the statute does not apply. *Williams v. Newsweek, Inc.*, 63 F.Supp.2d 734 (E.D.Va.1999), *aff'd*, 202 F.3d 262 (4th Cir. 1999). Similarly, uses of names or images that are merely incidental to the main purpose of the work are not actionable. *See id.* (holding that the incidental appearance of a person's image in a photograph from a book that was published in a Newsweek profile of the book was not actionable under the statute).

The use of Mr. Wiest's name and "facts" about his conduct and legal troubles is actionable because Mr. Wiest properly alleges it was used as an advertisement to solicit business for Defendant E–Fense. In *Riggins*, the Virginia Supreme Court held that a flyer prominently displaying a famous Washington Redskins NFL running back's name as a selling point for purchasing his former home was an "advertisement" and violated the privacy statute. *See Riggins*, 457 S.E.2d at 362. Similarly, the New York Court of Appeals held that a non-profit medical center performing abortions whose promotional calendar included an image of the plaintiff without her consent was liable under the New York statute because the calendar constituted an "advertisement." *Beverley*, 579 N.Y.S.2d 637, 587 N.E.2d at 278. The quoted sections regarding Mr. Wiest appear on a page entitled "Case Histories" on E–Fense Inc.'s website. E–Fense is not a news organization, but rather a private organization that provides services to clients. The top of the page states:

> Hackers with the right tools and experience can threaten the integrity of any system—public or private. As former

Air Force Office of Special Investigations agents specializing in digital forensics and cyber intrusion investigations, members of our team have served as case agents in some of the biggest hacking investigations to date. Highlights of their experience involve contributions to the following renowned cases . . .

Complaint, Exs. A & B. Through his complaint and attached exhibits, Mr. Wiest's properly alleges that E–Fense, Inc. used his name and statements concerning him to solicit customers for business. Because Mr. Wiest properly alleges that Defendants used Mr. Wiest's name and statements concerning him to profile and sell their services to other customers, Mr. Wiest states a claim for violation of Va.Code. Ann. § 8.01–40.

■ Furthermore, despite Defendants' argument to the contrary, publication of these statements is not protected because the trial was a matter of public record. *See* Defs.' Mem. at 4–5 (citing *Cox Broadcasting Corp.*, 420 U.S. at 494, 95 S.Ct. 1029 and *Craig*, 331 U.S. at 374, 67 S.Ct. 1249 (1947)). In *Riggins*, the defendant similarly attempted to rely on *Cox Broadcasting Corp.*, arguing that real estate records were matters in the public record and therefore information gleaned from them could be used without fear of violating the plaintiff's privacy rights. 457 S.E.2d at 364. The Virginia Supreme Court rejected this argument, holding that the defendant's reliance on *Cox Broadcasting Corp.* was "misplaced" because of the United States Supreme Court's qualification that "we do not have at issue here an action for the invasion of privacy involving the appropriation of one's name." *Id.* (citing *Cox Broadcasting Corp.*, 420 U.S. at 489, 95

---

5. Because this code provision is substantially similar to New York's corresponding statute, Virginia courts look to New York courts for guidance in analyzing the statute. *Falwell v.*

*Flynt*, 797 F.2d 1270, 1278 (4th Cir.1986), *rev'd on other grounds*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988).

S.Ct. 1029) (internal quotations omitted). As in *Riggins* and unlike *Cox Broadcasting Corp.*, the very issue in this case *is* invasion of privacy. Consequently, because Mr. Wiest properly alleges the elements of a violation of Va.Code Ann. § 8.01–40 and because Defendants are not protected from liability just because his trial was a matter of public record, the Court denies Defendants' motion to dismiss Plaintiff's statutory invasion of privacy claim.

*Cause of Action No. 4: Common Law Invasion of Privacy*

■ The Court dismisses Plaintiff's claim for common law invasion of privacy because no such cause of action exists under Virginia law. Va.Code. Ann. § 8.01–40 "provides the only remedy under Virginia law for a claim of invasion of privacy." *See, e.g., Williams*, 63 F.Supp.2d at 736 (citations omitted); *see also Levin*, 564 S.E.2d at 395 n. 5 (stating that the General Assembly's decision to codify only misappropriation of name or likeness for commercial purposes as an actionable invasion of privacy tort "implicitly excluded" invasion of privacy torts recognized in other jurisdictions). Consequently, the Court dismisses Count 4 of Plaintiff's Complaint.

*Complaint Filed Against Corporate Officers and Employees*

■ The Court denies Defendants' motion to dismiss as to the John Doe employee defendants and Defendant Andrew Fahey in part. Corporate officers may be liable "jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability." *Sit–Set, A.G. v. Universal Jet Exchange, Inc.*, 747 F.2d 921, 929 (4th Cir.1984) (citing RESTATEMENT (SECOND) OF AGENCY § 347 (1957)). An officer "is liable only for those intentional torts he or she commits or authorizes on behalf of the corporation."

*Airlines Reporting Corp. v. Pishvaian*, 155 F.Supp.2d 659, 666 (E.D.Va.2001). All torts at issue in this case are intentional. Mr. Wiest alleges that John Doe Employees 1 though 20 are "employees and/or officers of Defendant E–Fense, Inc., who were involved with the publication of the subject website, particularly its 'Case Histories Section' or who had control over Defendant Fahey or the subject website by administrative and/or technical means." Complaint ¶ 3. He further alleges that Mr. Fahey is an employee and officer of E–Fense. He then refers to E–Fense, Fahey and the John Does collectively as "Defendants" throughout the complaint. Because Mr. Wiest points to all the defendants throughout his complaint, he is alleging that they all were engaged in these allegedly tortious activities; in other words, he is not attempting to pierce the corporate veil, but rather is alleging that all the defendants were involved with the alleged torts against him. Consequently, the Court cannot dismiss the complaint against Mr. Fahey or the John Does.

### III. CONCLUSION

The Court holds that Plaintiff Mr. Wiest states claims as to Counts One (Libel/Slander) and Two (Insulting Words) of his Complaint because he properly alleges the falsity of the statements on Defendants' website, and the statements on Defendants' website were not a fair and accurate depiction of the public record. In addition, the Court holds that Plaintiff Mr. Wiest states a claim for statutory invasion of privacy, Va.Code Ann. § 8.01–40, but not for common law invasion since no such cause of action exists in Virginia. Further, the Court holds that Plaintiff states a claim as to Mr. Fahey and John Doe Employees 1 through 20, jointly and severally with E–Fense, Inc., because Mr. Wiest alleges the John Doe employees were involved in the allegedly tortious activities of

corporation. For the foregoing reasons, it is hereby

ORDERED that Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss is GRANTED as to Cause of Action Number Four. Furthermore, Defendants' motion to dismiss is DENIED as to Causes of Action Numbers One through Three. Finally, Defendants motion to dismiss John Doe Employees 1 through 20 and Mr. Andrew Fahey is DENIED.

Defendants are directed to answer the complaint within ten days of receipt of this Order.

The Clerk is directed to forward a copy of this Order to counsel of record.