Argued and submitted December 3, 1996, reversed and remanded in part; otherwise affirmed February 19, 1997

Jeanie SCHRAM,
*Appellant,*

*v.*

ALBERTSON'S, INC.;
David Cooper;
and Theodore (Ted) Sturgill,
*Respondents.*

(9411-07604; CA A91574)

934 P2d 483

Charles J. Merten argued the cause and filed the briefs for appellant.

Corbett Gordon argued the cause for respondent Albertson's, Inc. With her on the brief was Corbett Gordon & Associates.

Barbee B. Lyon argued the cause for respondent David Cooper. With him on the brief were Peter H. Koehler, Jr., and Tonkon, Torp, Galen, Marmaduke & Booth.

Ralph F. Rayburn argued the cause and filed the brief for respondent Theodore Sturgill.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Plaintiff appeals from summary judgment in favor of defendants Albertson's, Sturgill, and Cooper on plaintiff's claims of unlawful employment discrimination under ORS 659.030, common-law wrongful discharge, and intentional interference with an employment relationship. Summary judgment is appropriate if the moving party can show that the pleadings, depositions and affidavits raise no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47C; *Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996). In deciding whether summary judgment is appropriate, plaintiff is entitled to have all reasonable inferences drawn in her favor. *Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 572, 919 P2d 39 (1996). We reverse and remand as to all claims against Albertson's and as to the claims for intentional interference with an employment relationship against Sturgill and Cooper; otherwise, we affirm.

BACKGROUND AND FACTUAL INFORMATION

Plaintiff was the first woman hired by Albertson's as a dispatcher in any of its nine distribution and transportation centers around the country. Dispatchers supervise Albertson's truck drivers and are the lowest level of management within the transportation department. Plaintiff began working in September 1992 and left her employment in December 1993. Cooper was the transportation superintendent at the Portland site and plaintiff's immediate supervisor. Cooper was supervised by Sturgill, who was the manager of the transportation department. Sturgill reported to the center's general manager, Frank Riddle. Riddle and Sturgill hired plaintiff. The other individual who plays a prominent role in this case is Jeff Harum. Harum was terminated by Albertson's for sexually harassing plaintiff in October 1993. In describing the facts of this case, we have separated them into two categories: (1) the treatment of plaintiff before Harum's termination, and (2) the treatment of plaintiff after Harum's termination.

(1) When the evidence is viewed in the light most favorable to plaintiff, it shows the following: Harum was a

friend of Sturgill and Cooper. Defendants do not dispute that Harum sexually harassed plaintiff before he was terminated. Plaintiff reported Harum's abuse to Cooper and Sturgill many times but, according to plaintiff, they ignored her. Also, plaintiff offered evidence that Cooper embarrassed her in front of a driver by making a joke about a "whore show" and dismissed her objection to the joke by accusing her of being "sentimental." Additionally, Cooper was present when Harum called plaintiff a "fucking cunt" and took no action.

Sturgill was present on more than one occasion while Harum was harassing plaintiff. According to plaintiff, Sturgill took no action to stop Harum's conduct and encouraged him by siding with him against plaintiff. Sturgill was also present when Cooper laughed at the clothes that plaintiff was wearing and said she "looked like fucking Peter Pan with bows." Again, Sturgill did not admonish Cooper. When plaintiff complained, Sturgill summarily dismissed her reports of harassment by both Harum and Cooper and told her that she was "allowing her emotions to get in the way of her job."

Plaintiff offered other evidence that Sturgill denigrated her work performance by saying she was "cute" but was not doing her job. He once cursed at her for wearing jeans on a Saturday, telling her they were too tight and caused "men's balls to swell up just like grapes." He told plaintiff to forget her "dream" of becoming a transportation manager at Albertson's because Albertson's does not "have women transportation managers, and we are not about to start."

In September 1993, plaintiff complained about Harum's treatment of her to the personnel manager in Portland. He encouraged plaintiff to report the matter to Riddle. She followed his advice and Harum was suspended and later terminated.

(2) After Harum was terminated, plaintiff claims that Sturgill and Cooper began to act in a retaliatory manner towards her. She offered evidence that she was constantly criticized by them for things that had not generated criticism while Harum was there. There is evidence that Cooper ranted, raved, screamed, yelled, and swore at her. Sturgill

also required only plaintiff and not the male dispatchers to arrive 15 minutes early for their shift.

■ Also, there is evidence that other employees noticed that after Harum was terminated, Sturgill's and Cooper's treatment of plaintiff worsened. Roger Priest, a driver for Albertson's, states in his affidavit: "After Jeff Harem [sic] was terminated, Defendants Sturgill and Cooper became much more hostile toward plaintiff, and spoke of her in much more negative ways." Also, plaintiff testified in her deposition that another driver, Jeff Siefert, told her "I've noticed ever since Jeff's been gone that you've had a lot harder time."[1] Plaintiff also testified in her deposition that Steve Belliveau, during a conversation with her, expressed a belief that she was targeted for different treatment after Harum was fired.

On December 8, 1993, plaintiff arrived at work and saw a note to call Cooper about a mistake she had made regarding delivery of certain sundries to the Seattle stores. Plaintiff and Cooper spoke over the telephone and got into a disagreement. Cooper became furious and started swearing at plaintiff. Plaintiff became upset and started crying. Because plaintiff had to dispatch a driver immediately, she told Cooper that she had to go and hung up the telephone. Cooper called back, even more angry that plaintiff had hung up on him, and screamed at plaintiff to "get [her] ass in the office an hour early tomorrow" so that he and Sturgill could meet with her. Plaintiff then left work and had no further contact with Albertson's or any of its employees.

### THE PLEADINGS

In November 1994, plaintiff filed a complaint alleging: (1) that Albertson's, Sturgill, and Cooper had sexually harassed and discriminated against her in violation of ORS 659.030; (2) that she had been constructively discharged on December 8, 1993, because Sturgill and Cooper, "acting in the course and scope of their employment," retaliated against

---

[1] On appeal, defendants argue that much of plaintiff's evidence is not admissible. However, plaintiff's evidence was admitted into the summary judgment record without objection and we will not consider defendants' objection for the first time on appeal. *Aylett v. Universal Frozen Foods Co.*, 124 Or App 146, 154, 861 P2d 375 (1993).

her for reporting Harum's sexual harassment; and (3) that Sturgill and Cooper had intentionally interfered with her employment relationship with Albertson's. Defendants moved for summary judgment, and the trial court entered summary judgment for all defendants on all claims. Plaintiff then filed this appeal.

## THE ORS 659.030 CLAIMS

We first address whether the trial court properly granted summary judgment to Albertson's on plaintiff's claims of gender discrimination and sexual harassment under ORS 659.030. Albertson's argued to the trial court that summary judgment was proper because plaintiff did not present any evidence that Riddle was aware of the discrimination by Cooper or Sturgill. Plaintiff countered that Albertson's was on notice about the discrimination because corporate managers (Cooper and Sturgill) were participants in the discrimination. Albertson's responded that Cooper's and Sturgill's knowledge does not matter because they are not management level employees. The trial court held that our decision in *Mains v. II Morrow, Inc.*, 128 Or App 625, 635, 877 P2d 88 (1994), required plaintiff to present facts "sufficient for a reasonable juror to conclude that defendant Albertson's knew or should have known of the specific conduct complained of in this case" and that plaintiff had presented no evidence to preclude summary judgment.

■ The trial court's ruling on the required level of knowledge is not correct as to all of the allegations of unlawful employment practices made by plaintiff under the statute. ORS 659.010(6) defines an "employer" as

> "any person, * * * who in this state, directly or through an agent engages or utilizes the personal service of one or more employees reserving the right to control the means by which such service is or will be performed."

Thus, for purposes of discrimination by an "employer" under ORS 659.030, the act of an agent, who acts within his or her scope of authority in a discriminatory fashion, constitutes an act of the employer.

■ One of the allegations of discrimination against Albertson's is that it paid her a lower wage than similarly situated male employees. Another allegation is that Albertson's required her to report to work 15 minutes earlier than anyone else on her shift because of her sex. Those are the kinds of allegations that require no proof of a particular level of scienter other than that the discriminatory decisions are made by someone who has the authority to make those kinds of decisions on behalf of the employer. It is inferable from plaintiff's evidence that decisions about the amount of wages and other working conditions, such as when to report to work, were made by individuals to whom Albertson's had given that kind of authority. Under the statute, those decisions are imputed to Albertson's.

Our decision in *Mains* is not to the contrary. In that case, the plaintiff claimed that her shop supervisor had created a pervasive atmosphere of sexual harassment in the work place. We held that there was a genuine issue of fact as to whether management-level employees had knowledge of the supervisor's conduct and condoned it. Some of plaintiff's allegations fall into that kind of classification of discrimination, but, as explained above, not all do. Whether responsibility will be imputed to the employer through the acts of an agent under ORS 659.030 and ORS 659.010(6) must be determined on a specification-by-specification basis. The trial court erred in granting summary judgment as to the entire claim on the ground that plaintiff was required to prove that Riddle was aware of all of the incidents of discrimination.

Plaintiff also assigns error to the summary judgment granted to Sturgill and Cooper on her ORS 659.030 claims against them. They argue that there is insufficient evidence of any discrimination on their part. We disagree, because plaintiff's evidence, if believed by a jury, could support a finding of discrimination on their part.

■ Sturgill and Cooper also argue that as "supervisors," they are not liable, individually, under ORS 659.030 as a matter of law. They rely on our holding in *Ballinger v. Klamath Pacific Corp.*, 135 Or App 438, 898 P2d 232, *rev den* 322 Or 360 (1995). In *Ballinger*, we held that an individual supervisor could not be liable under ORS 659.030(1)(a) and ORS

659.030(1)(b)[2] in an individual capacity, because the statutory definition of "employer" does not include individuals with supervisory authority. 135 Or App at 452. Only an *employer* could be liable under ORS 659.030(1)(a) and (1)(b). However, the plaintiffs in *Ballinger* did not allege that the supervisor was liable because he had personally aided and abetted the discrimination.

In plaintiff's complaint, she alleges:

> "Between September 21, 1992 and December 8, 1993 the defendant Albertson's, Inc., aided and abetted and encouraged and directed by defendants Cooper and Sturgill and Jeff Harum, discriminated against plaintiff because of her gender with respect to terms and conditions of her employment in violation of ORS 659.030."

Plaintiff argues, and we agree, that her allegations suffice to fall within the provision of ORS 659.030(1)(g). That statute provides that it is an unlawful employment practice

> "[f]or any person, *whether an employer or an employee,* to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under ORS 659.010 to 659.110 * * * or to attempt to do so." (Emphasis supplied.)

The plain text of the statute clearly encompasses both employees and employers and reaches those employees who aid and abet unlawful employment practices.

■　　　The remaining question, however, is whether the legislature has provided a remedy to a plaintiff who has been discriminated against by an aider and abetter. ORS 659.121 provides the remedies for violations of ORS 659.030. ORS 659.121(1) provides:

> "Any person claiming to be aggrieved by an unlawful employment practice prohibited by ORS * * * 659.030 * * * may file a civil suit in circuit court for injunctive relief and

---

[2] ORS 659.030 provides, in part:

"(1) [I]t is an unlawful employment practice:

"(a) For an employer, because of an individual's * * * sex, * * * to refuse to hire or employ or to bar or discharge from employment such individual. * * *

"(b) For an employer, because of an individual's * * * sex, * * * to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

the court may order such other equitable relief as may be appropriate, including but not limited to reinstatement or the hiring of employees with or without back pay."

ORS 659.121(2) provides:

"Any person claiming to be aggrieved by alleged violations of ORS 659.033(1) or (3), 659.295 or 659.400, 659.405, 659.410(1), 659.415 to 659.435 and 659.550 may file a civil action in circuit court to recover compensatory damages or $200, whichever is greater, and punitive damages. In addition, the court may award relief authorized under subsection (1) of this section and such equitable relief as it considers appropriate."

ORS 659.121(1) provides for injunctive and other equitable relief for violations of ORS 659.030. However, ORS 659.121(2) is inapplicable to plaintiff's claim.

Plaintiff does not seek an injunction against Sturgill and Cooper but instead requests back pay in the amount of $76,858 and front pay in the amount of $1,200,000. We have previously held that a back pay claim under ORS 659.121(1) is a claim for equitable relief permitted by ORS 656.121(1) because of the relationship between back pay and reinstatement of employment. *Seitz v. Albina Human Resources Center*, 100 Or App 665, 673, 788 P2d 1004 (1990). It is questionable whether front pay is an equitable remedy in the light of the holding in *Tadsen v. Praegitzer Industries, Inc.*, 324 Or 465, 470, 928 P2d 980 (1996).[3] In *Tadsen*, the Supreme Court held that front pay is a form of compensatory damages under ORS 659.121(2). When the two statutes are read together, it is arguable that the legislature intended the remedies in ORS 659.121(2) to be exclusive to that subsection. However, we need not decide whether front pay is an equitable remedy under ORS 659.121(1) for the reasons set forth below.

■■ Assuming without deciding that an award of front pay is a legally cognizable equitable remedy under ORS

---

[3] But see the testimony before the House Labor Committee when discussion occurred about what remedies were available under ORS 659.121(1). Bill Canessa, then Oregon Assistant Attorney General, testified: "Equitable is how much pay you've lost, or you should be hired, front pay. All the different equitable remedies you might have." House Labor Committee, Work Session on HB 2223, April 9, 1977, Tape 14, Side 1; *see also Seitz*, 100 Or App at 672.

659.121(1), we conclude that the legislature would not have intended that kind of relief, nor any other type of lost wages, to be awarded as an equitable remedy against Sturgill and Cooper on the facts alleged in this case. In the context of ORS 659.121(1), equitable relief is in the nature of restitution or to restore the position of the plaintiff to what she would have enjoyed but for the discrimination. The concept of restitution implies that the actor who is responsible for the restitution is under a duty to return what has been deprived from the injured party or pay its equivalent value to the injured party. *Johnson v. Steen*, 281 Or 361, 372, 575 P2d 141 (1978).

Here, plaintiff seeks to be compensated only for the wages lost because of the discrimination. The nature of the relief to which she is entitled is dictated by the peculiar circumstances of her relationship with Sturgill and Cooper and their relationship to Albertson's. Albertson's is a large company with many supervising employees, and Cooper and Sturgill are low-level supervisors. As coemployees with plaintiff, Sturgill and Cooper were not responsible for the payment of plaintiff's wages, and the ultimate responsibility for the payment of lost wages is with Albertson's. It may be that Sturgill's and Cooper's wrongdoing has caused plaintiff to incur damages, but Albertson's is the entity that benefitted from not having to pay wages to plaintiff. Moreover, requiring lost wages to be paid by Sturgill and Cooper departs from the idea of restoration of plaintiff's employment status as it existed before she left her job and is more in the nature of sanctions or punishment. Under the circumstances, such an award would belie the kind of "equitable" remedies that the legislature would have contemplated against coemployees like Sturgill and Cooper. For these reasons, we conclude that the legislature could not have intended that plaintiff's equitable remedies under ORS 659.121(1) include judgments against Sturgill and Cooper for either back or front pay. The trial court did not err in granting Sturgill and Cooper summary judgment on the ORS 659.030 claims for the reason that plaintiff does not seek any remedy against them that is available under the statute on the facts alleged.

### THE CLAIMS FOR WRONGFUL DISCHARGE

■■ Next, plaintiff assigns error to the trial court's entry of summary judgment for defendant Albertson's on her common-law constructive wrongful discharge claim. Plaintiff

claims that she was constructively discharged because Sturgill and Cooper retaliated against her for reporting Harum's sexual harassment. In order to establish a claim for constructive discharge,

> "a plaintiff must allege and prove that (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions." *McGanty v. Staudenraus*, 321 Or 532, 557, 901 P2d 841 (1995) (emphasis in original; footnotes omitted).

Albertson's argued to the trial court that there is insufficient evidence that Sturgill and Cooper intended to force plaintiff to resign. The trial court ruled that

> "[b]ecause the entire Second Claim, for wrongful constructive termination, stands or falls on proof that whatever activity was engaged in was done 'in retaliation' for her report as to Harum, the case simply vanishes with the vanishing evidence. For if plaintiff cannot prove that more than one specific act of the alleged acts occurred after the date that would be the triggering event for such 'retaliation,' what are the 'specified working conditions' that she must first allege and prove that would then give rise to her right to prove the other three of the four elements required by *McGanty*? Given plaintiff's pleading and the evidence produced in support of it, there aren't any."

We disagree with the trial court's appraisal of the evidence. As set out previously in the opinion, there is considerable evidence that plaintiff was treated differently by Sturgill and Cooper after Harum's employment was terminated. In the light of Sturgill's and Cooper's friendship with Harum and their tacit approval of his conduct, a jury could properly infer that Cooper and Sturgill intended to retaliate against plaintiff because of her report. The trial court erred when it granted summary judgment to Albertson's on the ground that there was insufficient evidence that Sturgill and Cooper

intended to make plaintiff's work environment so onerous that she was required to quit.

Plaintiff also argues that the trial court erred when it granted summary judgment to Sturgill and Cooper on her claim for wrongful discharge against them. They argue that they cannot be held liable for discharging plaintiff because

"[h]iring and discharge are functions of the employer, constituting the beginning of the employment relationship and the end of it. A supervisor is not a party to that employment relationship. The tort of wrongful discharge should be limited to the employer who is the party to that relationship."

We agree.

In general, torts are based on the violations of duties owed by one party to another other than those created by contract. *Urban Removal Agency v. Lackey*, 275 Or 35, 38, 549 P2d 657 (1976). The tort of wrongful discharge was first recognized in this state in *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975). In that case, the court held that there are "circumstances in which *an employer* discharges an employee for such a socially undesirable motive that *the employer* must respond in damages for any injury done." *Id.* at 218 (emphasis supplied). In other words, the tort of wrongful discharge arises when an employer violates a duty imposed by an established public policy. *See Delaney v. Taco Time Int'l.*, 297 Or 10, 16-17, 681 P2d 114 (1984) (*e.g.*, employee fired for refusing to sign a false and arguably tortious statement); *see also Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or App 371, 380, 879 P2d 1288 (1994), *rev dismissed* 321 Or 511 (1995) (*e.g.*, bank employee discharged for refusing to disclose confidential customer financial information). The employment relationship is a necessary element of the tort and establishes the duty of the employer on behalf of the employee not to violate an established public policy. That relationship does not exist among fellow employees.

Plaintiff argues that by not permitting a supervisor to be liable for the tort of wrongful discharge, such a ruling

"violates the basic principle that an actor bears personal responsibility for his own tortious conduct, including his conduct in causing or encouraging another to commit a tort.

\* \* \* That principle runs throughout Oregon tort law, and may have been best articulated for employment law purposes in *Wampler v. Palmerton*, 250 Or 65, 77, 439 P2d 601 (1968):

> " '\* \* \* there is no reason to protect corporate officers or employees who authorize, direct and participate in tortious conduct by their corporate principal. *If the corporation commits a tort as a result of such intentional action on the part of its officers or employees, these agents are also responsible.*' " (Citation omitted; footnotes omitted; emphasis supplied by plaintiff.)

*Wampler* stands for the proposition that when an employee violates a duty in both a representative capacity and a personal capacity, the employee can be held liable in both capacities. In order to determine whether an employee has committed tortious conduct in a personal capacity, the elements of the alleged tort determine whether such a duty exists. In the case of the tort of wrongful discharge, only an employer can discharge an employee. When a supervisor acts to discharge an employee, he or she is acting solely in his or her representative capacity for the employer. There is no duty owed by the supervisor in a personal capacity to the employee. We do not understand *Wampler* to hold differently.

Plaintiff also argues that our holding in *Butler v. Dept. of Corrections*, 138 Or App 190, 909 P2d 163 (1995), requires us to rule that a supervisor could be liable for the tort of wrongful discharge. In *Butler*, we said that the defendant "Robinson would not be relieved from liability solely because he was following his employer's instructions." *Id.* at 194-95. However, *Butler* is not a case about supervisor liability for the tort of wrongful discharge. The claims against Robinson were for statutory violations, constitutional violations and for intentional interference with an economic relationship. As we said in the beginning of this discussion, the elements of the particular tort determine who is subjected to liability. Further, plaintiff's reliance on our decision in *Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 831 P2d 73 (1992), is misplaced. In that case, there were claims brought against members of the board of directors of a nonprofit corporation. The defendants in that case did not raise the argument made by Sturgill and Cooper, and the issue was not before us.

Finally, plaintiff relies on the *Restatement (Second) of Torts*. She reiterates

"the basic principle that an actor bears personal responsibility for his own tortious conduct, including his conduct in causing or encouraging another to commit a tort. *Restatement (Second) of Torts*, §§ 876, 877(a)."

We are unpersuaded that a general principle of tort liability imposes a duty in an Oregon employment relationship where none has previously been recognized. The tort of common-law wrongful discharge finds its genesis in well-established policies of important public interest. *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 90, 689 P2d 1292 (1984). To agree with plaintiff, we would have to find a policy that proclaims that a fellow employee is responsible for damages that arise out of a wrongful discharge. Plaintiff can point to no such policy, and we decline the invitation to invent one. The trial court did not err in granting summary judgment to Sturgill and Cooper on plaintiff's wrongful discharge claims.

## THE CLAIMS FOR INTENTIONAL INTERFERENCE WITH AN EMPLOYMENT RELATIONSHIP

 Plaintiff's final assignments of error address whether the trial court properly granted summary judgment for Sturgill and Cooper on the common-law claim for intentional interference with an employment relationship. The elements of the tort of intentional interference with an employment relationship are: (1) the existence of an economic relationship; (2) the intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the relationship, and (6) damages. *McGanty v. Staudenraus*, 321 Or 532, 535, 901 P2d 841 (1995).

Plaintiff alleges:

"Defendants Cooper and Sturgill intentionally interfered with plaintiff's employment with Albertson's by: (a) causing her constructive discharge through use of wrongful means violative of ORS 659.030(1)(f), as described in paragraph 3(b)-(h) above; and (b) causing her constructive discharge

solely for the purpose of satisfying their personal and malicious desires to take revenge against plaintiff for contributing to the termination of Jeff Harum."

Sturgill and Cooper argue that the only evidence is that they were acting within the scope of their employment and that the claim of intentional interference with an employment relationship cannot exist when a supervisor acts within the scope of the supervisor's authority by discharging an employee. Under those circumstances, according to defendants, the supervisor is acting within the scope of his authority, and it is axiomatic that the supervisor is not a "third party" for purposes of the tort. *McGanty*, 321 Or at 538.

In *Boers v. Payline Systems, Inc.*, 141 Or App 238, 243, 918 P2d 432 (1996), we held that

> "[a] managing officer of a corporation, including one with the authority to hire and fire, is subject to liability for intentional interference in the same way as any other corporate employee if the officer acts without any purpose to serve the employer but solely with improper motives or purposes."

In that case, the plaintiff alleged that a corporate officer fired him to retaliate because the plaintiff had reported wrongdoing of another person to the Board of Directors. Similarly, Sturgill and Cooper could be liable if they acted to force plaintiff to leave her employment as retaliation for plaintiff's report about Harum. Under those circumstances, a jury could find that they were acting solely for their own benefit and not to serve Albertson's. We conclude that there are genuine material issues of fact on all of the elements of the tort that preclude summary judgment on these claims.

Reversed and remanded as to all claims against Albertson's and as to the claim for intentional interference with an employment relationship against Sturgill and Cooper; otherwise affirmed.