PRESENT: All the Justices

PTS CORPORATION, D/B/A
 ALLIANCE BAIL BONDS, ET AL.,

                                        OPINION BY
v.  Record No. 011396           JUSTICE DONALD W. LEMONS
                                        April 19, 2002
LARRY BUCKMAN

        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    Thomas S. Shadrick, Judge

    In this appeal of an action brought by Larry A. Buckman

("Buckman") against his former employer, PTS Corporation, d/b/a

Alliance Bail Bonds ("Alliance") and Patsy D. Tauro ("Tauro")

(collectively "defendants") alleging improper use of his name

for advertising or trade purposes, we consider whether the trial

court erred in overruling a motion in limine to exclude evidence

of an investigation of Buckman.  Also, we consider whether the

trial court erred in overruling Tauro's demurrer concerning his

personal liability under Code § 8.01-40(A).

                I.  Facts and Proceedings Below

    Buckman worked as a bail bondsman for Alliance for

approximately seven years before leaving in late March 1998 to

work in used car sales.  Despite his departure, Alliance did not

remove his name from its advertisement in the August 1998 – July

1999 edition of the Bell Atlantic Yellow Pages for South Hampton

Roads, Virginia.

    On March 25, 1999, Buckman filed a bill of complaint

against Alliance, Tauro, and Joseph Scott ("Scott"), seeking

injunctive relief, compensatory damages, and punitive damages. Tauro and Scott were both officers and owners of Alliance. The complaint alleged that "[t]he actions of the Defendants constitute[d] a blatant violation of Code of Virginia § 8.01-40, which authorizes Plaintiff to pursue a suit to prevent and restrain the unauthorized use of his name." Buckman claimed that Alliance's continued use of his name in its telephone book advertisement after his employment with Alliance ceased constituted a violation of the statute. Buckman also alleged that the named defendants "told and/or implied to prospective customers who called by telephone that Larry Buckman did still, in fact, work for Alliance, when the Defendants knew full well that he did not."

Tauro and Scott filed a demurrer to the complaint, claiming that Code § 8.01-40(A) allowed for suit "against the person, firm, or corporation so using such person's name" and that Buckman did not allege that either Scott or Tauro "used" his name, but only that Alliance "used" his name. Further, Tauro and Scott maintained that Buckman failed to allege facts to show that either Tauro or Scott acted "in any capacity other than as employees, owners, and officers of Alliance Bail Bonds." The trial court overruled the demurrer.

On January 31, 2000, the trial court entered an order by consent of the parties transferring the action from the equity

2

side to the law side of the court.  In the order, the trial court enjoined the defendants from committing any of the actions "complained of in the [b]ill of [c]omplaint . . ."

On October 27, 2000, the defendants filed a motion in limine for entry of an order excluding the testimony of Detective Gene Eller ("Detective Eller") of the Virginia Beach Police Department.  In the motion, they represented that approximately one year after Buckman ceased working for Alliance, Tauro initiated a complaint with the State Corporation Commission Bureau of Insurance ("Bureau of Insurance") after he found a completed power of attorney that Buckman "checked out" but had never returned, and which had been reported as lost.[1] Upon the advice of the Bureau of Insurance, Tauro reported the matter to the Virginia Beach Police Department, and Detective Eller subsequently conducted an investigation.  Ultimately, no criminal charges were initiated against Buckman as a result of the investigation.  In the motion, the defendants argued that the testimony of Detective Eller "ha[d] absolutely no bearing on the underlying lawsuit," and was irrelevant to an alleged violation of Code § 8.01-40(A).

---

[1] Powers of attorney authorize bail bondsmen to sign bail bonds on behalf of the surety company.

Immediately prior to the commencement of the jury trial on November 6, 2000,[2] the trial court heard arguments on the defendants' motion in limine.  In response to the motion in limine, Buckman argued that Code § 8.01-40(A) allowed punitive damages, and that evidence of the investigation was relevant to the degree of punishment.  Buckman claimed that Alliance and Tauro planned to argue that they acted in good faith toward Buckman, and that he wanted to demonstrate that both the unauthorized use of his name and the investigation were part of "their desperate effort to keep him out of the business" and demonstrated their lack of good faith in dealing with him.  The trial court decided to "allow Detective Eller to testify for whatever relevance his testimony might have."  Buckman's counsel elicited testimony about the investigation from Tauro, Scott, Detective Eller, and Buckman himself.

To support his claim for compensatory damages, Buckman presented the testimony of various individuals who testified that when they telephoned Alliance asking for Buckman, they were led to believe that Buckman still worked for Alliance.  Dean Dayton ("Dayton") testified that he telephoned Alliance in March 1999 and when he asked for Buckman, the person who answered the telephone said that Buckman "wasn't on duty."  Another bondsman

---

[2] The claim against Scott was nonsuited on the day of trial and an order was entered on November 20, 2000.

from Alliance wrote the $7000 bond for Dayton.  Similarly, Garth Cooper testified that when he called Alliance looking for Buckman in October 1998, he was told that Buckman "wasn't in the office that day."  A third witness, Kevin Hall, testified that when he called Alliance looking for Buckman he was told that Buckman "[was] busy."  Buckman testified that he called Alliance himself, using another name, to see what kind of response he would get after asking to speak to Larry Buckman.  The woman who answered the telephone told him that she would page Buckman and that "[a]s soon as we hang up, the page will go out and he'll call you back."  Buckman asserted that this conduct by Alliance, which led at least three callers to believe that Buckman still worked for the company, constituted a violation of Code § 8.01-40(A).

The jury returned a verdict in favor of Buckman for $490 in compensatory damages and $175,000 in punitive damages.  Alliance and Tauro moved to set aside the verdict, arguing that the compensatory damage award was without evidence to support it and that the award of punitive damages shocked the conscience.  The trial court took the motion under advisement.

The parties submitted written memoranda in support of their positions on the motion to set aside the verdict and for a new trial.  Alliance and Tauro argued that the compensatory damage award was contrary to the evidence and that the punitive damage

5

award was excessive under state law and unconstitutional under federal law.  Alliance and Tauro also alleged that the evidence of the investigation "was what drove the jury's award" and reiterated their argument that the investigation was irrelevant to the violation of Code § 8.01-40(A).  In his memorandum in opposition, Buckman argued that the evidence supported both the compensatory and punitive damage awards.  Buckman further argued that the trial court properly overruled the defendants' pretrial motion in limine regarding the relevance of evidence of the investigation.

By order entered April 2, 2001, the trial court denied the defendants' motion to set aside the verdict and for a new trial, and entered judgment against the defendants, jointly and severally, in the amount of $490 in compensatory damages and $175,000 in punitive damages, with interest from the date of trial.  Alliance and Tauro appeal the adverse ruling of the trial court.

## II.  Analysis

On appeal, Alliance and Tauro argue that the trial court erred in overruling their motion to set aside the verdict and for a new trial.  They further argue that the trial court erred in overruling their motion in limine to exclude the testimony of Detective Eller and evidence of the investigation of Buckman.

6

Finally, Alliance and Tauro maintain that the trial court erred in overruling Tauro's demurrer to the bill of complaint.

Buckman argues that the record supports both the compensatory and punitive damage awards and that the trial court properly allowed the testimony of Detective Eller and evidence concerning the investigation.  Buckman further argues that the verdict was properly entered against Tauro personally.

Code section 8.01-40(A) provides:

> Any person whose name, portrait, or picture is used without having first obtained the written consent of such person, or if dead, of the surviving consort and if none, of the next of kin, or if a minor, the written consent of his or her parent or guardian, for advertising purposes or for the purposes of trade, such persons may maintain a suit in equity against the person, firm, or corporation so using such person's name, portrait, or picture to prevent and restrain the use thereof; and may also sue and recover damages for any injuries sustained by reason of such use.  And if the defendant shall have knowingly used such person's name, portrait or picture in such manner as is forbidden or declared to be unlawful by this chapter, the jury, in its discretion, may award exemplary damages.

In Town & Country Prop. Inc. v. Riggins, we held that it was unnecessary to prove "wilful, wanton and/or malicious conduct" in order to support an award of punitive damages under Code § 8.01-40(A).  249 Va. 387, 399, 457 S.E.2d 356, 365 (1995).  All that is necessary under the statute to support an award of

7

punitive damages is proof that the defendant "knowingly used" plaintiff's name, portrait, or picture without consent for advertising purposes or for the purposes of trade.  Id.

While holding that the statute does not require proof of "wilful, wanton and/or malicious conduct," we did not state that such evidence was inadmissible.  Nothing in the statutory language of Code § 8.01-40(A) suggests a restriction upon proof of damages.  To the contrary, the statute expands the circumstances in which punitive damages can be awarded.  We believe that it would be an unreasonable interpretation of the intent of the General Assembly to expand the scope of punitive damages while limiting the proof of the quantum of damages awarded.  See Catron v. State Farm Mutual Auto. Ins. Co., 255 Va. 31, 38, 496 S.E.2d 436, 439 (1998) (recognizing that when statutory language is clear, the plain meaning and intent of the enactment will be given to it); see also Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001) (explaining that the Court determines the intent of the General Assembly from the words contained in the statute, unless a literal construction of the statute would yield an absurd result).  Accordingly, we hold that proof of "wilful, wanton and/or malicious conduct" is not necessary to support an award of punitive damages under Code § 8.01-40(A), but such proof is admissible in support of a determination of the quantum of punitive damages awarded.

8

However, it is axiomatic in the law that proof of damages must be related to the wrong suffered. The proof required for punitive damages is subject to the same causal connection. Here, Buckman's cause of action was based upon a statutory provision prohibiting the use of a name, portrait, or picture, without permission, for advertising purposes or for trade purposes. The statutory cause of action is premised upon the concept that a person holds a property interest in his or her name and likeness. Lavery v. Automation Mgmt. Consultants, Inc., 234 Va. 145, 154, 360 S.E.2d 336, 341-42 (1987). Such a property interest has value. A conversion occurs when another exercises dominion and control over such intangible personal property and uses it without the owner's consent. Town & Country, 249 Va. at 397, 457 S.E.2d at 364.

The trial court denied the defendants' pretrial motion in limine seeking to exclude testimony concerning the investigation of Buckman by the Bureau of Insurance or the Virginia Beach Police Department and the role played by Alliance or Tauro in causing such an investigation. Alliance and Tauro argue that such evidence was "wholly collateral and irrelevant to any issue" in the case. Buckman maintains that such evidence is proof of "wilful, wanton and/or malicious conduct" that is relevant to the quantum of punitive damages. Alliance and Tauro reply that even if such evidence is relevant, it should have

9

been excluded because its probative value is far outweighed by its prejudicial effect.

As we stated in Spurlin v. Richardson, 203 Va. 984, 990, 128 S.E.2d 273, 278 (1962):

> Evidence of collateral facts, from which no fair inferences can be drawn tending to throw light upon the particular fact under investigation, is properly excluded for the reason that such evidence tends to draw the minds of the jury away from the point in issue, to excite prejudice and mislead them.

The determination that proffered evidence is collateral is, in essence, a determination of relevance. See Seilheimer v. Melville, 224 Va. 323, 327, 295 S.E.2d 896, 898 (1982) (recognizing that the "collateral facts" rule is purely a question of relevancy); see also Charles H. Friend, The Law of Evidence in Virginia § 11-4 at 392 (5th ed. 1999). The evidence of the investigation in May 1999 was irrelevant to the issue of the use of Buckman's name in the Yellow Pages in August 1998 and the four misleadingly handled telephone calls, all of which occurred before April 1999. The defendants' complaint to the Bureau of Insurance and the Virginia Beach Police Department was prompted by the discovery of a power of attorney form in Buckman's former desk at Alliance, a matter unrelated to the use of Buckman's name in the Yellow Pages or during telephone calls.

As such, it could not have been relevant to support an award of compensatory damages.

Additionally, the evidence concerning the investigation was irrelevant to the award of punitive damages for "knowing" use of Buckman's name. The premise underlying the use of someone's name, portrait, or picture in advertising or for trade purposes is that it has value. Surely, causing an investigation of Buckman for allegations that could have resulted in criminal charges and conviction was inconsistent with usurpation of such an asset. Simply stated, the evidence of use of his name and the evidence concerning the investigation were at cross-purposes. As such, the evidence admitted in support of the award of punitive damages was irrelevant to the underlying statutory cause of action. Perhaps such evidence could support a different cause of action, but it was inadmissible for any purpose in this action pursuant to Code § 8.01-40(A). Therefore, we hold that the trial court erred in denying the defendants' motion <u>in</u> <u>limine</u>.

At trial Buckman's counsel asked him, "what are you asking this jury to do?" Buckman replied:

> It's real hard to put an economic figure on what I feel that ya'll should award me. It's real tough. But I think that the law allows for punitive damages. I think that when somebody puts you through a lot of [undue] stress and aggravation and sleepless nights because you're being

11

> investigated for something you didn't do,
> I feel that you've got to hit them in the
> pocketbook.

The impact of the improperly admitted evidence of the investigation and Buckman's direct request for damages predicated upon it undoubtedly influenced the jury's award of both compensatory and punitive damages.

Because a new trial may produce a different verdict, it is unnecessary to address any of the remaining assignments of error except one that will, of necessity, arise again. We find no error in the trial court's overruling of Tauro's demurrer. Tauro maintains that only the corporate defendant may be liable on this proof. However, the express terms of the statute impose liability upon "the person, firm, or corporation so using such person's name." We have previously held corporate officers liable for their tortious conduct. See Miller v. Quarles, 242 Va. 343, 347-48, 410 S.E.2d 639, 642 (1991); see also Sit-Set, A.G. v. Universal Jet Exch., Inc., 747 F.2d 921, 929 (4th Cir. 1984). It is inconsequential that the cause of action is based on statutory rather than common law. The tort is one of conversion, recognized at common law. Town & County, 249 Va. at 397, 457 S.E.2d at 364.

Additionally, we have previously noted the similarity between Code § 8.01-40(A) and §§ 50 and 51 of the New York Civil Rights Act. Town & Country, 249 Va. at 394, 457 S.E.2d at 362

12

(citing N.Y. Civ. Rights Law §§ 50-51 (McKinney 1992)). Accordingly, we find the holding in Anderson v. Strong Memorial Hospital particularly persuasive. 531 N.Y.S.2d 735 (N.Y. Sup. Ct. 1988), aff'd, 542 N.Y.S.2d 96 (N.Y. App. Div. 1989).

In Anderson, the plaintiff brought an action against several doctors, a newspaper, and newspaper employees for invasion of privacy and breach of the doctor-patient privilege. While the patient was in an examination room at the doctors' office, a newspaper photographer took a photograph of him and assured him that he would not be recognizable in the photograph. Id. at 737. The photograph was published in a local newspaper two days later, and the plaintiff claimed he was identifiable and that the publication caused him significant stress and turmoil. Id. The court held that a plaintiff could only maintain an action for invasion of privacy against the doctors under § 51 of the Civil Rights Law if he demonstrated that the doctors "used" the photograph. Id. at 738. The court defined the term "used" in the statute and stated that although the plaintiff alleged that the doctors encouraged him to have his photograph taken, there were no allegations that they "took the photograph, sold it, published it, or otherwise exercised any control over it, to give rise to the conclusion that they 'used' the photograph." Id.

Code § 8.01-40(A) similarly requires that a "person, firm, or corporation" must use the name, portrait, or picture of the plaintiff in order for the plaintiff to recover.  Under our statute, any one or more of the three named entities can be liable for "so using" the plaintiff's name, portrait, or picture.  The demurrer as to Tauro's individual liability was decided prior to the trial of the matter.  Of course the evidence at trial must support individual liability and sufficiently demonstrate that the individual defendant "used" the plaintiff's name.  Because Tauro did not object to jury instructions permitting the imposition of individual liability, we will not, in this appeal, review the sufficiency of the evidence to support such an instruction.

Accordingly, we will reverse the judgment of the circuit court and remand for a new trial.

<u>Reversed and remanded</u>.

14