Present:  All the Justices

ANGELA VANBUREN

                                        OPINION BY
v.  Record No. 120348          JUSTICE LEROY F. MILLETTE, JR.
                                    November 1, 2012
STEPHEN A. GRUBB

            UPON A QUESTION OF LAW CERTIFIED BY THE
     UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

     On March 1, 2012, the United States Court of Appeals for

the Fourth Circuit entered an order of certification requesting

that we exercise our jurisdiction pursuant to Article VI,

Section 1 of the Constitution of Virginia and Rule 5:40, and

answer the following question:

     Does Virginia law recognize a common law tort claim
     of wrongful discharge in violation of established
     public policy against an individual who was not the
     plaintiff's actual employer, such as a supervisor or
     manager, but who participated in the wrongful firing
     of the plaintiff?

In an order dated April 19, 2012, we accepted the

certified question, and, for the reasons stated herein, we

now restate the question pursuant to our authority under

Rule 5:40(d) and answer in the affirmative.

                           BACKGROUND

                     A.  Factual History

     Because this case arises from the granting of a motion to

dismiss by the United States District Court for the Western

District of Virginia, we must take the factual allegations in

Angela VanBuren's complaint as true "for the purposes of

framing an answer that is responsive to the needs of the [Fourth Circuit]." Wyatt v. McDermott, 283 Va. 685, 689, 725 S.E.2d 555, 556 (2012) (citing Zinermon v. Burch, 494 U.S. 113, 118 (1990)). Accordingly, the facts presented herein are those alleged in VanBuren's complaint.

VanBuren was employed as a nurse by Virginia Highlands Orthopedic Spine Center, LLC, from December 2003 to March 2008. Soon after she joined Virginia Highlands, VanBuren was subjected to sexual harassment by her supervisor, Virginia Highland's owner Dr. Stephen Grubb. He would "hug her, rub her back, waist, breast and other inappropriate areas, and attempt to kiss her." Although VanBuren told Dr. Grubb that his sexual advances were "offensive" and "unwelcome[]," he continued to pursue her. In May 2006, while the two were travelling for business, Dr. Grubb went to VanBuren's hotel room and "began rubbing her back, waist, breast and hair while stating that he loved her." VanBuren broke free of his embrace and told him that "she was not going to have sex with him," that "he was a married man," and that "he needed to leave."

Dr. Grubb's sexual harassment continued after VanBuren's marriage in 2007. Dr. Grubb tried to "console" VanBuren regarding her subsequent marital problems. His "consoling" entailed "encouraging [her] to leave her husband and then proceeding to hug, kiss, and grope her." VanBuren "continued

2

to insist that [Dr. Grubb's] advice and sexual advances were unwelcomed and offensive."

In March 2008, Dr. Grubb again suggested during a closed-door meeting that VanBuren leave her husband so that she "could accept his love for what it was and what it could be." A few days later, Dr. Grubb called VanBuren into his office and asked whether she planned to stay with her husband. When she responded in the affirmative, he fired her. He then offered her roughly a month's severance pay to remain silent about the sexual harassment. Dr. Grubb gave no other explanation for terminating VanBuren's employment with Virginia Highlands.

B. Procedural History

In March 2010, VanBuren filed suit, asserting a claim for gender discrimination against Virginia Highlands under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), and asserting a claim for wrongful discharge against Dr. Grubb and Virginia Highlands. As to the latter claim, she alleged that she had been discharged from Virginia Highlands because she had refused to engage in criminal conduct – specifically, adultery in violation of Code § 18.2-365 and open and gross lewdness and lasciviousness in violation of Code § 18.2-345. Accordingly, she contended that her discharge violated public policy. See Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985).

3

Both Dr. Grubb and Virginia Highlands moved to dismiss. The district court granted the motion as to Dr. Grubb, "conclud[ing] that, were the Virginia Supreme Court to directly address this issue, it would find that wrongful discharge claims by an employee are cognizable only against the employer and not against supervisors or co-employees in their individual capacity."  VanBuren then moved the district court to enter final judgment against Dr. Grubb so that she could appeal its decision.  The district court granted the motion, and VanBuren appealed to the Fourth Circuit.  After briefing and oral argument, the Fourth Circuit determined that it could not predict with confidence how this Court would rule as to whether a wrongful discharge claim is cognizable against an individual such as Dr. Grubb.  The Fourth Circuit accordingly certified the question to this Court, and we accepted.

A certified question must be "determinative of the proceeding[s] in the certifying court."  Rule 5:40(c).  Upon examination of the certified question, we conclude that the question as posed encompasses a larger body of employees than is essential to produce a determinative answer in these proceedings.  We therefore exercise our discretion under Rule 5:40(d) to restate the question as follows:

> Does Virginia law recognize a common law tort claim
> of wrongful discharge in violation of established
> public policy against an individual who was not the

4

plaintiff's actual employer but who was the actor in violation of public policy and who participated in the wrongful firing of the plaintiff, such as in the capacity of a supervisor or manager?

DISCUSSION

A.  The Public Policy Exception to Employment-at-Will in the Commonwealth

Virginia "strongly adheres to the employment-at-will doctrine," Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 102, 439 S.E.2d 328, 330 (1994), that "when the intended duration of a contract for the rendition of services cannot be determined by fair inference from the terms of the contract, then either party is ordinarily at liberty to terminate the contract at will, upon giving the other party reasonable notice." Miller v. SEVAMP, Inc., 234 Va. 462, 465, 362 S.E.2d 915, 916-17 (1987).

This rule, however, is not absolute.  In Bowman, 229 Va. at 540, 331 S.E.2d at 801, we held that a corporate employer could be held liable in tort for the discharge of two employees who were also shareholders of the corporation.  The corporation had discharged the employees because they had refused to vote their shares in accordance with the wishes of the corporation's board of directors.  Id. at 537-38, 331 S.E.2d at 799-800.  We observed that the corporation's coercion violated the public policy underlying former Code § 13.1-32 (now Code § 13.1-662), which grants each shareholder the right to cast one vote for

5

each share held.  Id. at 540, 331 S.E.2d at 801.  "Because the right conferred by statute is in furtherance of established public policy," we reasoned, "the employer may not lawfully use the threat of discharge of an at-will employee as a device to control the otherwise unfettered discretion of a shareholder to vote freely his or her stock in the corporation."  Id.  Thus, "applying a narrow exception to the employment-at-will rule," the Court held that "the [employees] ha[d] stated a cause of action in tort against the [corporation] and the named directors for improper discharge from employment."  Id.

Since Bowman, the Court has considered several cases in which a public policy exception was asserted.  In each case, the Court has emphasized that the exception is "narrow": "termination of an employee in violation of the policy underlying any one [statute] does not automatically give rise to a common law cause of action for wrongful discharge."  Rowan v. Tractor Supply Co., 263 Va. 209, 213, 559 S.E.2d 709, 711 (2002) (alteration in original) (internal quotation marks and citation omitted).

VanBuren's claim falls under one such narrow exception previously recognized by the Court:  discharge based on the employee's refusal to engage in a criminal act. Mitchem v. Counts, 259 Va. 179, 190, 523 S.E.2d 246, 252 (2000) (holding discharge based upon refusal to engage in fornication and lewd

and lascivious cohabitation to be against public policy). VanBuren similarly alleges that her discharge resulted from her refusal to engage in the criminal acts of adultery and lewd and lascivious cohabitation. There is no question that VanBuren has stated a cognizable wrongful discharge claim against her employer, Virginia Highlands. We now address the issue of whether she has done the same against Grubb, since the Court has never squarely addressed whether a wrongful discharge claim can be brought against an individual employee.

B. Personal Liability of Employees for Wrongful Discharge

Although we have not specifically addressed the personal liability of employees for wrongful discharge, we have twice allowed wrongful discharge claims to proceed against individual defendants who both committed the acts in violation of public policy and effected the termination. In Bowman, we held that "the plaintiffs ha[d] stated a cause of action in tort against the Bank and the named directors for improper discharge from employment." 229 Va. at 540, 331 S.E.2d at 801 (emphasis added). Nearly a decade later in Lockhart, we concluded that a wrongful discharge claim based on gender discrimination could go forward against both the plaintiff's former employer and her former supervisor. 247 Va. at 106, 439 S.E.2d at 332. In one of the two actions reviewed in Lockhart, the corporate employer was a sole proprietorship, and the president of the company,

7

her supervisor, allegedly engaged in activities comparable to the allegations in this case.

While many jurisdictions have likewise permitted such actions without any explicit holding on the matter, several of our sister states have directly addressed the issue of individual liability for persons committing tortious acts in an employment setting.  See, e.g., Myers v. Alutiiq Int'l Solutions, LLC, 811 F.Supp.2d 261, 269 (D.D.C. 2011) (holding that the "D.C. Court of Appeals would allow claims against individual supervisors for wrongful discharge" because "individuals are liable for their own torts, even as agents acting on behalf of their employers"); Higgins v. Assmann Elecs., Inc., 173 P.3d 453, 458 (Ariz. Ct. App. 2007) (holding that "[c]orporate officers are liable to those harmed by such officer[s]" when their "acts constitut[e] the wrongful termination" of an employee); Jasper v. H. Nizam, Inc., 764 N.W.2d 751, 776 (Iowa 2009) (holding that an individual corporate officer can be held liable for wrongful discharge because the tort "does not impose liability for the discharge from employment, but the wrongful reasons motivating the discharge"); Ballinger v. Delaware River Port Auth., 800 A.2d 97, 110 (N.J. 2002) (holding that "an individual who personally participates in the tort of wrongful discharge may be held individually liable" because "[a]n agent who does an act

8

otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal") (alteration in original) (internal quotation marks and citation omitted); Kamensky v. Roemer Inc., 1 Pa. D. & C. 4th 497, 499 (Pa. 1988) (holding that "an officer of the corporation who takes part in the commission of the tort by the corporation is personally liable therefor[]") (internal quotation marks and citation omitted); Harless v. First Nat'l Bank in Fairmont, 289 S.E.2d 692, 698, 699 (W. Va. 1982) (holding that liability on the part of the employer "does not mean that another employee who has been the principal protagonist in obtaining the employee's discharge would not also be liable," because "an agent or employee can be held personally liable for his own torts against third parties"). But see Miklosy v. Regents of Univ. of California, 188 P.3d 629, 645 (Cal. 2008) (holding that the agency relationship shields employees from tort liability for wrongful discharge).

We find Virginia's existing precedent permitting such suits to be consistent with the Court's established case law regarding agency relationships. It has long been settled in Virginia that "employers and employees are deemed to be jointly liable and jointly suable for the employee's wrongful act." Thurston Metals & Supply Co. v. Taylor, 230 Va. 475, 483-84, 339 S.E.2d 538, 543 (1986); see also Miller v. Quarles, 242 Va.

343, 347, 410 S.E.2d 639, 642 (1991) ("Both principal and agent are jointly liable to injured third parties for the agent's negligent performance of his common law duty of reasonable care under the circumstances.").

Grubb argues that, as only the employer has the ability to effect a discharge, the liability must cease there. We are not persuaded. In a wrongful discharge case, the tortious act is not the discharge itself; rather, the discharge becomes tortious by virtue of the wrongful reasons behind it. Jasper, 764 N.W.2d at 776. Where those tortious reasons arise from the unlawful actions of the actor effecting the discharge, he or she should share in liability. Here, VanBuren was fired because she would not give in to Grubb's unlawful demands. As Grubb was her supervisor and owner of the company, we conclude that, if her allegations are proven, he too should be subject to liability, just as he would be had he engaged in any other tortious conduct.

Indeed, the recognition in Bowman of a tort of wrongful discharge for public policy reasons leads to this result. Limiting liability to the employer would follow a contract construct. Wrongful discharge, however, is an action sounding in tort. While there are components of a contractual relationship, wrongful discharge remains a tort and tort principles must apply.

10

The purpose of the wrongful discharge tort — namely, the deterrence of discharge in violation of public policy — is best served if individual employees in a position of power are held personally liable for their tortious conduct. Employer-only liability would be insufficient to deter wrongful discharges, as this case clearly demonstrates. In response to the suit, Grubb left Virginia Highlands, the medical practice he himself started, and joined another healthcare provider. If the Court does not recognize individual liability in such cases, there may be nothing to prevent other business owners from following this model in an attempt to avoid liability.

We recognize the concern that supervisors will be hesitant to rightfully discharge at-will employees for fear of suit. We believe, however, that the extremely narrow nature of wrongful discharge actions, as discussed in Part A, supra, and the requirement that the defendant employees' personal actions be shown to have violated the relevant public policy, provides sufficient protection from the overuse of wrongful discharge claims.

CONCLUSION

For the aforementioned reasons, we conclude that Virginia recognizes a common law tort claim of wrongful discharge in violation of established public policy against an individual who was not the plaintiff's actual employer but who was the

actor in violation of public policy and who participated in the wrongful firing of the plaintiff, such as a supervisor or manager.

    Certified question, as restated, answered in the affirmative.

CHIEF JUSTICE KINSER, with whom JUSTICE GOODWYN and JUSTICE McCLANAHAN join, dissenting.

    In this certified question case, the Court must resolve a question of first impression: Can the common law tort action for wrongful discharge in violation of public policy be brought against an individual who is not the employer of the discharged employee?  I conclude the question must be answered in the negative because, as the district court stated, "when the employee-employer relationship has been wrongfully terminated, liability to the wronged employee can only rest with the other party in that relationship, the employer."  VanBuren v. Virginia Highlands Orthopaedic Spine Ctr., LLC, 728 F.Supp.2d 791, 794 (W.D. Va. 2010).  Thus, I respectfully dissent.

    As the majority recognizes, this Court has never addressed the question now before us.  Although both Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985), and Lockhart v. Commonwealth Education Systems Corporation, 247 Va. 98, 439 S.E.2d 328 (1994), included allegations against individual

12

defendants who engaged in conduct in violation of public policy but who were not the plaintiffs' employers, neither case involved a challenge to whether the tort of wrongful discharge could be maintained against those non-employer defendants. Thus, the decisions in those cases have no precedential value in addressing the precise issue presented now.  Virginia has no "existing precedent" allowing such actions.

To answer the restated certified question, I begin by analyzing what constitutes a tort.[1]  "A 'tort' is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie."  Jewett v. Ware, 107 Va. 802, 806, 60 S.E. 131, 132 (1908) (internal quotation marks omitted); accord Buchanan v. Doe, 246 Va. 67, 71-72, 431 S.E.2d 289, 291-92 (1993); Glisson v. Loxley, 235 Va. 62, 67, 366 S.E.2d 68, 71 (1988).  The term "tort" is defined as "a breach of a duty that the law imposes on persons who stand in a particular relation to one another."  Black's Law Dictionary 1626 (9th ed. 2009).  It is well established that every tort action consists of three elements:  (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages as a proximate result of the breach.  Kellermann v. McDonough, 278

---

[1] Whether Angela VanBuren stated a cognizable claim for wrongful discharge in violation of an established public policy against her employer is irrelevant to answering the restated certified question.

13

Va. 478, 487, 684 S.E.2d 786, 790 (2009); Marshall v. Winston, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990); Trimyer v. Norfolk Tallow Co., 192 Va. 776, 780, 66 S.E.2d 441, 443 (1951).  The threshold question in any tort action is whether the defendant owed a legal duty to the plaintiff.  Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995).

The common law tort of wrongful discharge has been understood from its inception as an exception to the common law employment-at-will doctrine.  Bowman, 229 Va. at 539-40, 331 S.E.2d at 800-01.  That doctrine means that "when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provisions, either party is ordinarily at liberty to terminate the contract at will upon giving reasonable notice of intention to terminate."  Id. at 535, 331 S.E.2d at 798 (citing Stonega Coal & Coke Co. v. Louisville & Nashville R.R. Co., 106 Va. 223, 226, 55 S.E. 551, 552 (1906)).  In Bowman, however, we recognized an exception "to the strict application of the doctrine in favor of at-will employees who claim to have been discharged in violation of an established public policy."  Id. at 539, 331 S.E.2d at 801.

In discussing the decision in Bowman, we later explained that the discharge there was tortious because "the employer had misused its freedom to terminate the services of at-will

14

employees in order to subvert" the statutory policy granting "each stockholder the unfettered right to cast one vote for each share of corporate stock held."  Miller v. SEVAMP, Inc., 234 Va. 462, 467, 362 S.E.2d 915, 918 (1987) (emphasis added). We further stated that "Bowman recognized an exception to the employment-at-will doctrine limited to discharges which violate public policy."  Id. at 468, 362 S.E.2d at 918 (first emphasis added).

Thus, an employer is free to terminate an at-will employee but may not do so for reasons that violate public policy.  The particular relationship from which this duty arises is that of employer and employee, and the legal duty imposed is to refrain from discharging an at-will employee for reasons that contravene public policy.  Only an employer can breach that duty because only an employer has the ability to hire and fire. There is no liability for wrongful discharge without a termination.  An individual manager or supervisor who carries out the wrongful discharge acts solely in a representative capacity for the employer, not in a personal capacity, because that individual stands outside the employer-employee relationship.  Such an individual, therefore, cannot be individually liable for that discharge.  Because the legal duty at issue in a claim for wrongful discharge does not flow from one employee to another employee, it is irrelevant if a manager

15

or supervisor also engaged in the conduct that violated public policy.

I am not alone in my view that an individual employee cannot be liable for the tort of wrongful discharge. Several states have reached the same conclusion. For example, in Buckner v. Atlantic Plant Maintenance Co., 694 N.E.2d 565, 569 (Ill. 1998), the Supreme Court of Illinois stated that, "[l]ogically speaking, only 'the employer' has the power to hire or fire an employee." Although an employee must carry out that function for the employer, the court stated, "it is still the authority of the employer which is being exercised." Id. Rejecting the "application of general principles of agency law," the court further explained:

> The plaintiff asserts that . . . an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts. This general rule may not, however, be logically applied to the tort of retaliatory discharge. As explained above, the power to hire and fire employees is ultimately possessed only by the employer. Consequently, the tort of retaliatory discharge may be committed only by the employer.

Id. at 570. See generally Rebarchek v. Farmers Coop. Elevator & Mercantile Assoc., 35 P.3d 892, 903-04 (Kan. 2001) (quoting extensively from Buckner and adopting its holding).

The Court of Appeals of Oregon took a similar approach in Schram v. Albertson's Inc., 934 P.2d 483 (Or. Ct. App. 1997). "[T]orts," the court stated, "are based on the violations of

16

duties owed by one party to another other than those created by contract." Id. at 490.

> [T]he tort of wrongful discharge arises when an employer violates a duty imposed by an established public policy. The employment relationship is a necessary element of the tort and establishes the duty of the employer on behalf of the employee not to violate an established public policy. That relationship does not exist among fellow employees.

Id. at 490-91 (citations omitted).

While the court recognized that an employee can be liable for his/her own torts, the court reasoned that in "determin[ing] whether an employee has committed tortious conduct in a personal capacity, the elements of the alleged tort determine whether such a duty exists. . . . [T]he elements of the particular tort determine who is subjected to liability." Id. at 491.

> In the case of the tort of wrongful discharge, only an employer can discharge an employee. When a supervisor acts to discharge an employee, he or she is acting solely in his or her representative capacity for the employer. There is no duty owed by the supervisor in a personal capacity to the employee.

Id.

Similarly, in Physio GP, Inc. v. Naifeh, 306 S.W.3d 886 (Tex. App. 2010), the Texas Court of Appeals rejected the application of agency principles. The court recognized that "[t]he employment relationship is the source of the duty in

17

wrongful discharge torts" and that relationship "exists only between the employer and employee, not between two employees, even when one of those employees is a supervisor or even the owner."  Id. at 888.

> Only the employer has the power to hire and
> fire, and supervisors merely exercise that power
> on the employer's behalf.  Corporate employees
> cannot, in their personal capacity, wrongfully
> discharge an employee because they have no
> personal authority to fire an employee.

Id. at 888-89 (citations omitted).

Nevertheless, the majority answers the restated certified question affirmatively in a situation when the employee who engaged in the wrongful conduct was also the individual who participated in the termination on behalf of the employer.  In doing so, the majority focuses on the wrongful conduct rather than the wrongful discharge itself.  Indeed, the majority states that "[i]n a wrongful discharge case, the tortious act is not the discharge itself."

In my view, this analysis overlooks the first element of the tort, the legal duty.[2]  That duty, as I have already

---

[2] In Jasper v. H. Nizam, Inc., 764 N.W.2d 751 (Iowa 2009), on which the majority relies, the court identified the following as the elements of the tort of wrongful discharge:

> (1) [E]xistence of a clearly defined public
> policy that protects employee activity; (2) the
> public policy would be jeopardized by the
> discharge from employment; (3) the employee
> engaged in the protected activity, and this
> conduct was the reason for the employee's

18

explained, is to refrain from discharging an at-will employee for reasons that violate public policy. An individual employee, no matter whether he/she is the owner, manager, supervisor, or director of the corporate employer, cannot breach that duty. We must not forget that this certified question asks about the common law tort of wrongful discharge, not some other tort such as assault and battery or intentional infliction of emotional distress. The elements of the tort at issue dictate who can be subjected to liability.

Our cases holding corporate officers individually liable for their tortious conduct are not dispositive because they presuppose that a corporate officer is <u>capable</u> of committing the tort in question. As the district court stated, "that is precisely the question with which the Court is concerned." <u>VanBuren</u>, 728 F.Supp.2d at 795. For example, in <u>Miller v. Quarles</u>, 242 Va. 343, 410 S.E.2d 639 (1991), this Court held that a corporate principal and its agents were jointly liable "for the agent's negligent performance of his common-law duty of reasonable care" under the particular circumstances alleged. <u>Id.</u> at 347, 410 S.E.2d at 642. There, the agent had a common law duty, which he breached, and the corporate principal was

discharge; and (4) there was no overriding business justification for the termination.

<u>Id.</u> at 761. Like the majority's analysis, these elements mistakenly focus on the employee's "protected activity" rather than the <u>employer's</u> act of discharging the employee. <u>Id.</u>

19

jointly liable under the theory of respondeat superior.  Id. at 347-48, 410 S.E.2d at 642.  Likewise, in PTS Corp. v. Buckman, 263 Va. 613, 561 S.E.2d 718 (2002), the statute at issue, Code § 8.01-40(A), imposed liability upon "the person, firm, or corporation" using an individual's name without written consent for advertising or trade purposes.  Id. at 622, 561 S.E.2d at 723.  For that reason, we held that the corporate officers, acting as agents of the corporate defendant, could be held liable for their conduct.  Id.

These cases illustrate the basic principle that a corporate officer is liable for his/her tortious conduct when he/she, as an individual, has a legal duty to another individual who stands in a particular relationship to the corporate officer.  As stated previously, when determining whether an employee is liable in a personal capacity, the elements of the particular tort at issue must be examined. Those elements determine who is subjected to liability.  See Schram, 934 P.2d at 491.  The majority fails to account for both what a tort is as a general matter and what this particular tort is by completely ignoring the employer-employee relationship at issue, the duty that arises from that relationship, and how such duty can be breached.  In other words, the majority does not address the specific elements of the common law tort of wrongful discharge.

20

I do not sanction the alleged behavior of the defendant, Dr. Stephen A. Grubb, and I understand the consequences of the fact that VanBuren's employer was a Virginia limited liability company. Those factors, however, do not justify expanding what has been until today a "narrow" exception to the employment-at-will doctrine. See Lockhart, 247 Va. at 104, 439 S.E.2d at 331. The majority cites policy reasons for the expansion of this narrow exception and states that "[e]mployer-only liability would be insufficient to deter wrongful discharges." Deterrence of wrongful discharges in violation of public policy is a laudable goal but cannot change the fact that an individual employee is incapable of committing the tort of wrongful discharge. Moreover, such policy determinations are for the General Assembly, not this Court.

For these reasons, I respectfully dissent and would answer the restated certified question in the negative.